STATE of Texas

v.

Angel AGUILERA, Appellee.

No. PD–0024–04.

Court of Criminal Appeals of Texas,
En Banc.

June 22, 2005.

Eduardo N. Lerma, SR, El Paso, for Appellant.

John L. Davis, Asst. District Atty., El Paso, for State.

## OPINION

JOHNSON, J., delivered the opinion of the Court, joined by MEYERS, PRICE, HOLCOMB, and COCHRAN, JJ.

Appellee was charged by a single indictment with three counts of aggravated sexual assault. Appellee made an open plea of guilty before the trial court, and the trial court initially sentenced him to 25 years' incarceration in the institutional division of the Texas Department of Criminal Justice. On the same day, after an off-the-record "victim impact statement" allocution, the trial court held an in-chambers discussion with the attorneys regarding the court's reconsideration of the sentence. The trial court, over the state's objection, then reassessed appellee's sentence at 15 years' incarceration. The state appealed. The court of appeals sustained the state's sole issue, reversed the judgment of the trial court, and remanded the cause to the trial court for reinstatement of the sentence originally assessed and the corresponding judgment of conviction. *State v. Aguilera,* 130 S.W.3d 134 (Tex.App.-El Paso, 2003). Appellee petitioned for discretionary review.

We granted review of appellee's sole issue, which asserts that the court of appeals erred in holding that Texas trial courts do not have the inherent power to vacate, modify, or amend their sentences downward within the time of their plenary power. The state argues that, once a defendant has been given a valid sentence, the trial court has no authority to change that sentence.

Appellee suggests that a trial judge should have the ability, upon reflection, to reform a defendant's sentence downward when the interests of justice require it and complains that the court of appeals stated that the present case is different from *McClinton v. State,* 38 S.W.3d 747 (Tex. App.-Houston [14th Dist.] 2001, pet. dism'd, improvidently granted), yet failed to distinguish them. He cites *Williams v. State,* 145 Tex.Crim. 536, 170 S.W.2d 482, 486 (App.1943), for the principle that a trial court has full power and control of its judgments, orders, and decrees, and suggests that *Powell v. State,* 124 Tex.Crim. 513, 63 S.W.2d 712 (App.1933), and its progeny prohibit reforming a sentence upward, but do not prohibit reforming downward, as the trial court did in this case.

The state asserts that, once a valid sentence has been imposed, as it was here, the trial court has no authority to change that sentence. The state also argues that a trial court does not have plenary power to do something simply because there is no authority prohibiting such an

action and that, because there is no express authority by statute or rule permitting the re-sentencing that occurred here, the trial court could not do so. The state further asserts that, even if there is plenary jurisdiction for a trial court to modify a previously imposed sentence, re-sentencing is statutorily prohibited by TEX.CODE CRIM. PROC. Art. 42.09, § 1, which provides that a defendant's sentence begins to run on the day that it is pronounced.[1] It further argues that permitting such a modification of a valid sentence could permit victim-impact statements to affect the fact finder at punishment in contravention of the Legislature's intent that such statements not affect the punishment.[2]

In *Harris v. State*, 153 S.W.3d 394 (Tex. Crim.App.2005), we recently held that: 1) a trial court improperly re-sentenced a defendant one day after having initially sentenced him to an authorized, valid sentence; 2) the original sentence imposed was legal and authorized; 3) the second attempt at sentencing violated the defendant's rights under the Double Jeopardy Clause; and 4) the second, twenty-five-year, sentence was an unauthorized and unconstitutional fifteen-year increase over the initial ten-year sentence. *Id.* at 397–98. While we noted that the trial court could have properly used its plenary power to modify the sentence if the new sentence

was within the same statutory range of punishment,[3] our decision was based on a constitutional violation, re-sentencing the defendant to a term of imprisonment that was outside of the statutory range of punishment rather than on a claim of plenary power to modify. *Id. Harris* is clearly different from the issue presented here, as the re-sentencing was done the next day and there can be no dispute that Harris had begun serving his sentence.

The procedural status of the case is relevant to our decision here. The appellee plead to the trial court without a plea bargain, thus the trial court's choice of sentence was limited only by the applicable statute. If appellee had plead pursuant to a plea bargain and the trial court had accepted the agreement, the sentence could not be changed without appellee's consent, as he would then be entitled to withdraw his plea. Absent a sentence not authorized by the applicable statute, a trial court may not alter a sentence assessed by a jury, but if the defendant elects sentencing by the judge after a jury trial, the situation is analogous to the open plea we are presented with here.

At a minimum, a trial court retains plenary power to modify its sentence if a motion for new trial[4] or motion in arrest of judgment[5] is filed within 30 days

---

1. The provision in Article 42.09, § 1, that a defendant's sentence "begins to run on the day it is pronounced" did not preclude the trial court from re-sentencing appellee on the same day on which he was initially sentenced.

2. The state did not assert, in its sole issue in the court of appeals, that the modification was based on an improper consideration of the victim-impact statement. Neither did it raise the issue in a cross-petition to appellee's petition for discretionary review. We therefore do not address the question of whether the trial court modified the sentence on an improper basis.

3. *Id.* at 396, n. 4. In the instant cause, Aguilera's subsequent fifteen-year sentence was

within the same first-degree-felony range of punishment as was his initial twenty-five-year sentence and was not an unconstitutional modification of that initial sentence. In addition, the modification made in *Harris* required the trial court to make an additional finding at the time of re-sentencing: the enhancement allegations were true. In this case, the trial court altered only its determination of what term of years constituted the appropriate sentence.

4. TEX. RULE OF APP. PROC. 21.4.

5. TEX. RULE OF APP. PROC. 22.3.

of sentencing.[6] We hold that a trial court also retains plenary power to modify its sentence if, as in this case, the modification is made on the same day as the assessment of the initial sentence and before the court adjourns for the day.[7] The re-sentencing must be done in the presence of the defendant, his attorney, and counsel for the state. Such modifications comport with the provisions of Article 42.09, § 1, that a defendant's sentence begins to run on the day that it is pronounced,[8] and the provisions of Tex.Code Crim. Proc. Art. 42.03, § 1(a), that a felony sentence shall be pronounced in the defendant's presence. In such circumstances, a trial court has the authority to re-sentence a defendant after assessing an initial sentence if the modified sentence is authorized by statute.

 In this case, the trial court was acting within its authority when, only a few minutes after it had initially sentenced appellee and before it had adjourned for the day, it modified appellee's sentence.[9]

---

**6.** We note that we have held that a plea of guilty to the court results in a unitary trial. *Carroll v. State*, 975 S.W.2d 630, 631 (Tex. Crim.App.1998). We have also held that a trial court cannot grant a new trial as to only the punishment phase of a trial. *State v. Hight*, 907 S.W.2d 845, 847 (Tex.Crim.App. 1995). However, a trial court may properly entertain a motion for new trial, grant it, rehear the defendant's plea, and re-sentence him, and it does not thereby violate the prohibition against a grant by a trial court of a new trial as to punishment only.

**7.** Concurring opinions from this Court have touched on the subject of plenary power. *See. e.g., Awadelkariem v. State*, 974 S.W.2d 721, 728–29 (Tex.Crim.App.1998)(Meyers, J., concurring)("a court has inherent power to correct, modify, vacate, or amend its own rulings" and, as long as it does not, by its ruling, divest itself of jurisdiction or exceed a statutory time limit, it can simply change its mind on a ruling. "The ability to do so is a necessary function of an efficient judiciary." *Id.* at 729.); *McClinton*, 121 S.W.3d at 769, n. 1 (Cochran, J., concurring)("Clearly a trial court has plenary jurisdiction over a case for at least the first thirty days after sentencing because it has the authority to receive a motion for new trial (or motion in arrest of judgment) within that time period and to resolve the merits of that motion within 75 days after sentencing.").

At least two courts of appeals have held that a trial court has the right to re-sentence a defendant within 30 days. *Junious v. State*, 120 S.W.3d 413, 417 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd)(trial court had inherent power within the time of its plenary jurisdiction to alter the defendant's sentence (motion for new trial timely filed; 25 years reduced to 10 years pursuant to plea bargain 15 days after original adjudication and sentencing)); *Ware v. State*, 62 S.W.3d 344, 353–55 (Tex. App.-Fort Worth 2001, pet. ref'd)(motion for new trial timely filed; a trial court in criminal cases possesses inherent power to correct, modify, vacate, or amend its own rulings (erroneously entered illegal sentence of 75 years reduced to legal sentence of 10 years by *nunc pro tunc* order 12 days after original sentencing)); *McClinton*, 38 S.W.3d at 747, 750–51 (Tex.App.-Houston [14th Dist.] 2001, pet. dism'd)(trial court's re-sentencing merely amended its ruling within its plenary power (12 years reduced to 10 years 20 days after original sentencing)). Under our holding today, only the decision in *McClinton* is incorrect.

**8.** TDCJ calculates the beginning of a sentence by date. Exactly when on a given day the sentencing occurred does not affect the calculation. A sentence pronounced at 10:00 a.m. has exactly the same sentencing date as a sentence pronounced at 4:30 p.m. It is thus meaningless to say that a defendant began serving his sentence at 9:30 a.m.; he began serving it on the day, not at the time, of sentencing.

**9.** We observe that a trial court has discretion to grant a motion for new trial in the interest of justice even though that basis is not specifically enumerated in the rules of appellate procedure. *State v. Gonzalez*, 855 S.W.2d 692, 694 (Tex.Crim.App.1993). However, a trial court does not have authority to grant a new trial on its own motion; there must be a timely motion for such by the defendant. *Zaragosa v. State*, 588 S.W.2d 322 (Tex.Crim.App. 1979); *Harris v. State*, 958 S.W.2d 292 (Tex. App.-Fort Worth 1997, pet. ref'd).

Appellee's sole ground for review is sustained. The court of appeals is reversed, and the trial court's sentence of fifteen years' incarceration is reinstated.

WOMACK, J., filed a concurring opinion.

COCHRAN, J., filed a concurring opinion, in which PRICE, J., joined.

KEASLER, J., filed a dissenting opinion in which HERVEY, J., joined.

KELLER, P.J., and HERVEY, J., dissented.

**WOMACK, J., concurring.**

As the dissenting opinion says, the trial court erred. What should we do next?

"Except for certain federal constitutional error labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis."[1] The applicable standard for the analysis is that of Rule of Appellate Procedure 44.2(b): "Any [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." A substantial right is affected when the error had a substantial and injurious effect or influence in determining a verdict.[2]

Without error, the trial court could have granted the appellant a new trial, received his plea of guilty, and assessed the same punishment. Therefore, it seems to me, the error did not affect a substantial right and must be disregarded.

I concur in the judgment of the Court.

**COCHRAN, J., concurring, in which PRICE, J. joined.**

I join the majority opinion. I write separately to emphasize several points: (1) the majority is not overruling *Williams v. State*[1] or *Powell v. State*;[2] (2) this is a "sauce for goose is sauce for gander" rule which protects both defendants and society-at-large from a trial judge's accidental misstatements or momentary mistakes; and (3) the State did not appeal the issue of whether the trial court's re-sentencing, if it was based upon a statutorily prohibited consideration of the victim impact statement, was illegal; therefore, we cannot address that issue.

A. **The majority opinion clarifies, but does not overrule, *Williams* and *Powell* on the question of when a sentence commences.**

In both *Williams* and *Powell*, this Court held that a trial court does not have the power to alter or modify a defendant's sentence once the defendant has begun to serve his sentence.[3] Indeed, the Double

---

1. *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Cr. App.1997).

2. *See, e.g., King v. State*, 953 S.W.2d 266, 271 (Tex.Cr.App.1997).

1. 145 Tex.Crim. 536, 542, 170 S.W.2d 482, 486 (1943) ("when the accused has accepted the judgment and has performed a part thereof, or has suffered some punishment as a result thereof, in which event the court is powerless to change the judgment in any substantial respect").

2. 124 Tex.Crim. 513, 515–16, 63 S.W.2d 712, 713 (1933) (trial court does not have power to stack sentences after appellant had served

several months of sentence which had been ordered to run concurrently with another sentence).

3. *Williams*, 145 Tex.Crim. at 542, 170 S.W.2d at 486; *Powell*, 124 Tex.Crim. at 515–16, 63 S.W.2d at 713; *see also Ex parte Reynolds*, 462 S.W.2d 605, 608 (Tex.Crim.App.1970) (holding that "it was beyond the power of the court ... to add a cumulation order onto the last sentence imposed after the petitioner had suffered punishment under the sentence originally imposed"); *Ex parte Brown*, 477 S.W.2d 552, 554 (Tex.Crim.App.1972) (trial court's re-sentencing order making sentences cumulative entered after defendant had been imprisoned for two months was invalid; "[s]uch

Jeopardy Clause of the United States Constitution forbids any increase in a defendant's sentence once that sentence has been served or "executed."[4] However, in *Powell,* this Court expressly stated:

> It seems to be well established by the authorities in other states that a court has power to revise, correct or vacate a sentence imposed during the term of the court in which the conviction was had and before the original sentence has gone into operation or action is had under it.[5]

The issue in this case, then, is when does a sentence go into operation? Article 42.09, section 1, of the Code of Criminal Procedure states that "[t]he defendant's sentence begins to run on the day it is pronounced...." The State argues that, in fact, it begins to run "the moment that it is orally pronounced and that sentencing has concluded."[6] This rule has the advantage of being a very bright line, but it fails in flexibility. Judges and parties occasionally make mistakes or misstatements in speaking. Such mistakes ought not be cast in stone.[7] "The Constitution does not re-

---

a belated attempt at altering the terms of a defendant's sentence [is] null and void of effect"); *Blackwell v. State,* 510 S.W.2d 952, 956 (Tex.Crim.App.1974).

**4.** *Ex parte Lange,* 18 Wall. 163, 175–6, 85 U.S. 163, 174, 21 L.Ed. 872 (1873) (double jeopardy protects against any increase in punishment for the same crime once the defendant has served his sentence or a portion thereof or otherwise suffered punishment; when statute set punishment at *either* a fine or imprisonment and defendant had already paid fine, trial court was without power to modify, five days later, original sentence of both a fine and imprisonment to delete the fine and require the imprisonment). In *Lange,* the Supreme Court expressly noted that the trial court *did* have constitutional authority to modify or alter the sentence upwards as long as that sentence had not yet been "executed." *Id.* at 174, 85 U.S. 163. *See also Ex Parte Barley,* 842 S.W.2d 694, 695 (Tex.Crim.App.1992) (a cumulation order entered after a defendant has commenced serving his sentence violates double jeopardy provisions); *see generally,* Lee R. Russ, *Power of State Court, During Same Term, to Increase Severity of Lawful Sentence–Modern Status,* 26 A.L.R.4th 905 at [3] (1983 & 2005 Supp.) ("Russ").

**5.** 124 Tex.Crim. at 515, 63 S.W.2d at 713.

**6.** The State relies, in part, on *Ex parte Madding,* 70 S.W.3d 131, 135 (Tex.Crim.App. 2002), in which this Court stated that

> the imposition of sentence is the crucial moment when all of the parties are physically present at the sentencing hearing and able to hear and respond to the imposition of sentence. Once he leaves the courtroom,

the defendant begins serving the sentence imposed.

*Id.* An important aspect in *Madding,* however, was that the defendant was *never* brought back into open court, much less on the same day as the original sentencing, before the written judgment was modified outside his presence and without his knowledge. *Id.* at 136 ("Once applicant was removed from the courtroom and began serving his sentence, it was too late to cumulate the sentence just imposed with an earlier one. A trial court does not have the statutory authority or discretion to orally pronounce one sentence in front of the defendant, but enter a different sentence in his written judgment, outside the defendant's presence"). To the extent that *Madding* could be construed as suggesting that the second the courtroom door closes upon the sentenced person's back, that person has begun serving his sentence, and that sentence is forever cast in stone regardless of how speedily the defendant is returned to open court, the majority's opinion today clarifies *Madding.*

**7.** *See Rowley v. Welch,* 72 App. D.C. 351, 114 F.2d 499 (1940). In rejecting the argument that the Double Jeopardy Clause prohibits any correction, alteration, or change once the words pronouncing sentence have fallen from a judge's lips, the court of appeals stated:

> If the mere oral pronouncement of the words of sentence is a final and irrevocable judgment taking unalterable effect instantaneously, by that act the prisoner is placed in danger of execution of the sentence and therefore in jeopardy. But this assumes that the oral utterance is final and unalterable, that it exhausts the court's power over its act of judgment. That certainly is not

quire that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." [8] Similarly, the rule fails to allow for a sudden change of heart if made swiftly enough.

Both federal and state jurisdictions, recognizing the inequitable harshness of such an inflexible rule, have held that a trial court may modify or alter its sentence—up or down—with "reasonable promptness" as long as the defendant has not actually begun to serve his sentence.[9] The virtue of the majority's default rule—a defendant's sentence begins at the adjournment of court on the day that it is pronounced—avoids the ticklish technicali-

true, so far as some kinds of change are concerned. The oral utterance is an act of judgment, but it is not an entirely unalterable one. Other events, as for example entry of the order of commitment, are required to give it absolute finality. Until they occur, the court retains jurisdiction and power, within recognized limits which need not be specified here, to make corrections, perhaps even other changes, which may be required by a right administration of justice. Entirely apart from specific constitutional limitations, therefore, there is nothing in the nature of mere oral pronouncement of sentence, judgmental in character though that act may be, which gives it absolutely unalterable quality.

... Appellant's view, carried to its logical extreme, would prevent a correction of mere inadvertence at any time after it occurs, even in the next breath. So construed, the Amendment would embalm into constitutional right an act of pure inadvertence, although every consideration of justice and its proper administration requires that this most solemn judicial step be taken with no taint of accident or inattention, but with the utmost deliberation and presence of mind. Courts, being human, cannot avoid occasional lapses characteristic of humanity, nor can the Constitution prevent them. It can only guard against their consequences. But it would not do so by perpetuating or making them inescapable.

*Id.* at 503 (footnote omitted).

**8.** *Bozza v. United States,* 330 U.S. 160, 166–167, 67 S.Ct. 645, 91 L.Ed. 818 (1947) (holding that five-hour interim between first and second sentencing did not violate double jeopardy although defendant was taken first to the U.S. Marshal's office and then to a local federal detention jail awaiting transportation to the penitentiary where he was finally to be confined; trial judge had forgotten to impose mandatory fine); *compare State v. Dickerson,* 864 S.W.2d 761, 763 (Tex.App.-Houston [1st Dist.] 1993, no pet.) (holding that trial court

did not have authority to correct mistake in failing to sentence defendant as habitual offender when less than a minute elapsed from time of imposing first sentence of two years to imposing intended sentence of twenty-five years even though it was clear that the "trial court meant to find the enhancement paragraphs true"); *Tooke v. State,* 642 S.W.2d 514, 518 (Tex.App.-Houston [14th Dist.] 1982, no pet.) (trial court, which immediately realized that it had mistakenly omitted consideration of enhancement paragraph in pronouncing sentence, could not correct mistake and re-sentence defendant in same proceeding). Of course, neither *Dickerson* nor *Tooke* survive the majority's holding today.

**9.** *See* Russ, 26 A.L.R.4th 905 at [4]; *see also United States v. DiFrancesco,* 449 U.S. 117, 134, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (noting that "the established practice in the federal courts [is] that the sentencing judge may recall the defendant and increase his sentence, at least (and we venture no comment as to this limitation) so long as he has not begun to serve that sentence"); *United States v. DiLorenzo,* 429 F.2d 216, 221 (2d Cir.1970) (because defendant was free on bail at the trial and had not yet commenced to serve his sentence, trial judge had the power to promptly recall him and impose a corrected sentence "a few hours later"); *Green v. United States,* 363 A.2d 979, 980 (Dist.Col. App.1976) (no double jeopardy violation when judge "misspoke" in originally sentencing defendant to a term of 3 to 6 years, and there was a delay of less than one hour before orally re-sentencing defendant to sentence of 3 to 9 years when defendant was still in courthouse); *Thomas v. United States,* 388 A.2d 1231, 1232–33 (Dist.Col.App.1978) (7 hour delay between imposition of original sentence and increased sentence was reasonably prompt when defendant had spent interval in detention cell awaiting transfer to jail; trial court explained that he wanted to correct a sentence he never intended to impose).

ties of deciding whether the defendant may be returned to the bench after the trial court has orally remanded him to the custody of the sheriff,[10] returned him from a hold-over cell[11] or the elevator,[12] and so forth. Of course, if the evidence affirmatively and clearly shows that the defendant had begun serving his sentence before adjournment of court on the day of sentencing,[13] then the trial court cannot modify or alter his original sentence under *Williams* or *Powell*.[14]

### B. The Court's rule permits a trial judge to alter or modify his sentence either up or down if the defendant has not yet begun to serve the original sentence.

Although the Court does not expressly say so, the rule set out in the majority opinion sets the finality of the sentencing process for both upward and downward alterations. A good rule generally works both ways. If a trial judge has authority to decrease a sentence before the defendant begins to serve that sentence—as the majority correctly holds—then surely he has equal authority to increase it if double jeopardy is no bar. As noted in the cases cited in Part A, double jeopardy is no bar.[15]

The majority holds that "a trial court also retains plenary power to modify its sentence if, as in this case, the modification is made on the same day as the assessment of the initial sentence and before the court adjourns for the day." That is, the trial court may modify its sentence either up or down on the day of sentencing as

---

**10.** *Maher v. State*, 991 P.2d 1248, 1250–51 (Wyo.1999) (although trial judge had completed sentencing and ordered defendant remanded to custody of sheriff, defendant had not left courtroom; trial judge could reconvene court 25 minutes later, recall defendant to bench, and cumulate sentences); *Vincent v. United States*, 337 F.2d 891, 893–894 (8th Cir.1964) (defendant had not yet begun serving his sentence when he had not left courtroom although he was told to report to the marshal; trial court had authority to re-sentence him).

**11.** *See Oxman v. United States*, 148 F.2d 750, 752–53 (8th Cir.1945) (defendant was sentenced to six years' imprisonment and taken to marshal's office in the same building while co-defendants were being sentenced; more than an hour later, the trial court ordered the defendant returned to the courtroom and resentenced him; permissible because it was done prior to commencement of service of sentence).

**12.** *See Rowley*, 114 F.2d at 501 (defendant had not begun to serve his sentence when he had been removed from courtroom, led through vestibule, and was recalled from elevator).

**13.** For example, if the defendant was sentenced to pay a fine and he did so before the

end of the day. *See Ex parte Lange*, 18 Wall. at 176, 21 L.Ed. 872.

**14.** Under the Supreme Court's reasoning in *DiFrancesco*, 133–39, it appears that the Double Jeopardy Clause might not necessarily bar an upward modification of a sentence under certain circumstances even though the defendant had begun serving it. 449 U.S. at 133–39, 101 S.Ct. 426; *see United States v. Lundien*, 769 F.2d 981, 985–87 (4th Cir.1985) (analyzing *DiFrancesco* and reasoning that double jeopardy did not bar resentencing even after a defendant had begun serving his sentence, but concluding that due process concerns should be balanced in each case in determining whether defendant's sentence can be increased once he has begun to serve it); *United States v. Busic*, 639 F.2d 940, 949–50 (3d Cir.1981) (stating that, under *DiFrancesco*, trial judge could alter sentence upward on remand from appeal when original sentence on multiple counts was incorrect); *compare United States v. Henry*, 709 F.2d 298, 309–10 (5th Cir.1983) (noting that the scope of the holding in *DiFrancesco* "remains uncertain," and declining to reach the constitutional question).

**15.** *See, e.g., DiFrancesco, supra; DiLorenzo, supra; Green, supra; Thomas, supra; Rowley, supra.*

long as the defendant has not yet begun to serve his sentence.

## C. The State did not appeal the propriety of a trial court altering its sentence after hearing the victim's statement.

The trial judge changed her sentence from twenty-five years to fifteen years after hearing the victim's statement about the crime. I certainly agree with the dissent that this is "an additional problem with this case which warrants mentioning."[16] It deserves nothing more than a mere mention, however, because the State did not appeal on this basis. The State raised a single point of error in the court of appeals:

> A trial court has no authority to "resentence" a defendant when the first sentence is within the statutory range and the defendant has begun serving the sentence, and any purported resentence is void and appealable by the State as being a sentence that is illegal. When the trial court here sentenced Aguilera to a valid sentence within the statutory range of punishment of 25 years' confinement and remanded him to custody, but within minutes, with the only intervening court event being the victim's post-sentencing statement, resentenced Aguilera to a lower punishment of 15 years' confinement, wasn't such purported resentencing void and appealable by the State as being a sentence that was illegal?

16. *Infra,* op. at 706 (Keasler, J., dissenting).

17. *The State did argue, in the court of appeals, that one rationale supporting its argument that the sentence was final and unalterable at the moment the trial judge orally spoke the words, was to avoid the situation in which a trial court could pronounce sentence, hear a victim impact statement, and then alter its sentence (either up or down) based upon that statutorily-prohibited consider-*

Because the State did not bring a point of error to the court of appeals addressing the purported illegal basis for the re-sentencing, we cannot address that question ourselves nor remand to the court of appeals to address an issue that was never directly presented to it.[17]

With these comments, I join the majority opinion.

KEASLER, J., dissenting, in which HERVEY, J., joined.

The majority resolves the issue before us by relying on an opinion from this Court and two Rules of Appellate Procedure, neither of which address this issue. I would begin with binding precedent from this Court and, following that precedent, I would conclude that the trial judge lacked the power to change Aguilera's sentence.

### Our Precedent

In *Williams v. State,* we recognized the general rule that a trial court has full power over its orders during the term of court in which they are made and may correct or modify them during that term.[1] But an exception exists when the defendant has suffered some punishment as a result of the order, in which case the trial court is powerless to change it.[2] We also stated in *Powell v. State* that, once the sentence has begun, the trial court is without power to set it aside.[3]

ation. *See* Tex.Code Crim. Proc. art. 42.03(b)(3) (victim impact statement must be made "after sentence is pronounced").

1. 170 S.W.2d 482, 486, 145 Tex.Crim. 536 (1943).

2. *Id.*

3. 63 S.W.2d 712, 713, 124 Tex.Crim. 513 (1933).

As the Court of Appeals below noted, we have repeatedly rejected attempts by trial judges to cumulate sentences after the first sentence has begun. In *Ex parte Brown*, we recognized that the defendant "had already suffered partial punishment under the [o]riginal sentence" at the time the judge entered the cumulation order.[4] We relied on *Williams* and *Powell* to hold that the "belated attempt at altering the terms of ... [the] defendant's sentence" was "null and void of effect." [5]

A defendant's sentence begins to run on the day it is pronounced.[6] The State argues that it is only logical that the sentence begin to run, not just on the day it is pronounced, but at the moment that it is pronounced. I agree. Aguilera's 25–year sentence began running the moment the trial judge pronounced it. Since Aguilera had already started serving his sentence, *Williams* and *Powell* mandate that the judge was without power to change it.

One judge on this Court has advocated overruling *Williams* and *Powell*.[7] But the Court has not done so, and the majority does not do so today. As a result, we must follow these holdings.

Rather than look to *Williams* or *Powell*, the majority relies on our recent opinion in *Harris v. State*[8] for the proposition that "the trial court could have properly used its plenary power to modify the sentence if the new sentence was within the same statutory range of punishment." [9] In *Harris*, we held that a second attempt at sentencing which increased the defendant's sentence violated the defendant's protection against double jeopardy.[10] The majority acknowledges that our decision in *Harris* was based on a constitutional violation, not a claim of plenary power.[11] As a result, it does not bear on this case. Moreover, the statement we made in *Harris* was unnecessary to the resolution of the opinion and therefore dicta. And we did not discuss *Williams* or *Powell* in *Harris*.

### Plenary Power

We have recognized that trial courts do have "plenary power" to alter their orders.[12] What we have not resolved is what "plenary power" encompasses or how long it lasts.[13] The majority concludes that a "trial court retains plenary power to modify its sentence if a motion for new trial or motion in arrest of judgment is filed within 30 days of sentencing." [14] But there is no support for this statement. The Court cites only Rules 21.4 and 22.3 of the Rules of Appellate Procedure. These two rules discuss motions for new trial and motions in arrest of judgment, but neither mentions anything about a trial judge's plenary power to modify a sentence.

In a footnote, the majority mentions concurring opinions from this Court which

---

**4.** *Ex parte Brown*, 477 S.W.2d 552, 554 (Tex. Crim.App.1972).

**5.** *Id. See also Ex parte Reynolds*, 462 S.W.2d 605, 607 (Tex.Crim.App.1970); *Blackwell v. State*, 510 S.W.2d 952, 956 (Tex.Crim.App. 1974); *Ex parte Voelkel*, 517 S.W.2d 291 (Tex. Crim.App.1975).

**6.** Art. 42.09, § 1.

**7.** *McClinton v. State*, 121 S.W.3d 768, 777 (Tex.Crim.App.2003) (Hervey, J., dissenting).

**8.** 153 S.W.3d 394 (Tex.Crim.App.2005).

**9.** *Ante,* op. at 697.

**10.** 153 S.W.3d at 397–98.

**11.** *Ante,* op. at 697.

**12.** *State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim.App.1994).

**13.** *See Ex parte Donaldson*, 86 S.W.3d 231, 234 (Tex.Crim.App.2002) (Keasler, J., concurring).

**14.** *Ante,* op. at 697–98.

have "touched upon" plenary power,[15] but it does not mention majority opinions from this Court which discuss it. In *State v. Bates*, we noted that former Appellate Rule 36 vested a court "with the authority to correct mistakes or errors in a judgment or order after the expiration of the court's plenary power, via entry of a judgment *nunc pro tunc*."[16] This statement implies that a judge has the power to alter a judgment without a *nunc pro tunc* judgment if he or she does so during the period of plenary power.

But in *State ex rel. Cobb v. Godfrey*, the judge contended that he could grant a motion for new trial outside the 75–day time limit provided in the Rules because of his "plenary power."[17] We rejected this contention, explaining that former Rule 31(e) required that if a motion for new trial was not ruled on within 75 days, it was overruled by operation of law.[18] Similarly, we held in *Awadelkariem v. State* that a judge may "freely rescind" its ruling on a motion for new trial as long as he acts within the 75 day time limit provided by the Rules of Appellate Procedure.[19] *Cobb* and *Awadelkariem* make clear that, to the extent that a judge has plenary power over a proceeding, that power is limited by the Rules of Appellate Procedure and by statute. It seems obvious that "plenary power" would also be restricted by this Court's precedent.

In this case, the trial court may have had "plenary power" over the case at the time that she changed Aguilera's sentence.

But *Williams* and *Powell* limit the extent to which the judge could exercise that power. Those cases hold that a judge cannot alter a sentence after it has begun.

## Procedural Status

The majority finds that the "procedural status of the case is relevant"[20] to its decision, explaining that this case involved an open plea. I read *Williams* and *Powell* to apply to any sentence, not just one that results from a particular type of plea. Is the majority holding that a judge has plenary power to change a sentence after an open plea is entered, but not in the case of a trial or a plea bargain? This seems contrary to its own rationale that plenary power to change sentences is somehow based on motions for new trial and motions in arrest of judgment, which can obviously be filed regardless of whether the case involves a guilty plea or a trial. I do not understand why Aguilera's open plea is relevant.

## Courts of Appeals Opinions

The majority mentions in a footnote three Courts of Appeals opinions,[21] but it fails to mention that our lower appellate courts are split on this issue.[22]

In *Tooke v. State*,[23] the trial court orally sentenced appellant to confinement in the Texas Department of Corrections "for not less than 5 years nor more than 50 years." After the defendant accepted the sentence, the court re-sentenced him to confinement "for not less than 15 years nor more than 50 years."[24] Relying on *Reynolds* and

15. *Ante*, op. at 698 n. 7.

16. 889 S.W.2d at 309.

17. 739 S.W.2d 47, 48 (Tex.Crim.App.1987).

18. *Id.* at 48–49.

19. 974 S.W.2d 721, 728 (Tex.Crim.App.1998).

20. *Ante*, op. at 697.

21. *See Junious v. State*, 120 S.W.3d 413 (Tex. App.-Houston [14th Dist.] 2003, pet. ref'd); *Ware v. State*, 62 S.W.3d 344 (Tex.App.-Fort Worth 2001, pet. ref'd); *McClinton v. State*, 38 S.W.3d 747 (Tex.App.-Houston [14th Dist.] 2001, pet. dism'd, improvidently granted).

22. *Ante*, op. at 698 n. 7.

23. 642 S.W.2d 514 (Tex.App.-Houston [14th Dist.] 1982, no pet.).

24. *Id.* at 516.

*Williams*, the appellate court found that the second sentence was null and void. The court held that "[t]he original sentence was a valid and proper sentence" and "[a]fter sentence was first imposed on appellant, the trial court was without power to set aside that sentence and order a new sentence." [25]

Similarly, in *State v. Dickerson*, [26] the judge sentenced the defendant to two years in prison. The judge realized he had made a mistake, called the defendant back up to the bench, and re-sentenced him to 25 years. "Not even a minute elapsed" between pronouncement of the two sentences. [27] The judge granted the defendant's motion to return the sentence to two years, and the State appealed, arguing that the court had the authority to change the sentence after it had been pronounced. [28] The court of appeals disagreed, relying on *Tooke*. It held that "the original sentence of two years was a valid and proper sentence," so the " 'attempted resentencing' ... was null and void." [29]

In contrast, the Fourteenth and Second Courts of Appeals have concluded that a trial court does have the right to re-sentence a defendant in these circumstances. [30] But none of these cases addresses *Williams* or *Powell*. The majority does not explain why it opts to side with these holdings rather than *Tooke* and *Dickerson*, which follow *Williams* and *Powell*.

## Victim Impact Statement

Finally, there is an additional problem with this case which warrants mentioning. The judge changed Aguilera's sentence after hearing the victim's statement. This very Court of Appeals has recognized that the "Legislature specifically enacted Article 42.03 to allow victim statements only after sentencing in order to alleviate any risk that the statement would affect the partiality of the fact finder at the punishment phase." [31] Indeed, the original bill permitted victim statements to be made before pronouncement of sentence. [32] But during the committee hearings, some members expressed concern that victim statements could influence the judge and change the punishment. [33] As a result, the bill was amended to provide for victim statements only after the court pronounces the sentence. [34]

The trial judge filed a bill of exceptions stating that the sentence change was made "after reconsideration of approximately 5 days of testimony," and "[n]othing occurring during the victim allocution was considered by the court in making this decision." This statement defies credibility. It is remarkably coincidental that the judge chose to reduce Aguilera's sentence right after hearing the victim's statement. I cannot condone this type of behavior. It seems an obvious attempt to circumvent Art. 42.03.

25. *Id.*

26. 864 S.W.2d 761 (Tex.App.-Houston [1st Dist.] 1993, no pet.).

27. *Id.* at 762.

28. *Id.* at 763.

29. *Id.*

30. *See Junious, supra; Ware, supra; McClinton, supra.*

31. *Garcia v. State*, 16 S.W.3d 401, (Tex.App.-El Paso 2000, pet. ref'd).

32. Keith D. Nicholson, *Would You Like More Salt With That Wound? Post–Sentence Victim Allocution in Texas*, 26 St. Mary's L.J. 1103, 1114–1115 (1995).

33. *Id.*

34. *Id.*

## Conclusion

If the majority wants to overrule *Williams* and *Powell,* it should do so. If it believes that *Junious, Ware* and *McClinton* are better reasoned that *Tooke* and *Dickerson,* it should explain why. If it believes that Appellate Rules 21.4 and 22.3 grant trial judges plenary power to alter sentences, it should explain why. Since the majority opinion does none of this, I cannot join it.