MEMORANDUM OPINION


Nos. 04-04-00292-CR, 04-04-00293-CR, 04-04-00294-CR, 

04-04-00295-CR, and 04-04-00296-CR


John Robert NORMAN, Jr.,


Appellant



v.



The STATE of Texas,


Appellee



From the 216th Judicial District Court, Kendall County, Texas


Trial Court Nos. 4148, 4149, 4150, 4151, and 4152


Honorable Stephen B. Ables, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Karen Angelini, Justice

 Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: December 5, 2007


AFFIRMED AS REFORMED

 John Robert Norman was convicted of three counts of sexual assault and two counts of
indecency with a child and was sentenced to twenty years on each count to run concurrently. He
brings four issues on appeal: (1) whether restitution was properly assessed and imposed; (2) whether
the sentences for indecency with a child should be reformed; (3) whether the trial court improperly
allowed the State to introduce and use extraneous, unadjudicated offenses in cross-examination and
rebuttal; and (4) whether he was denied effective assistance of counsel. We affirm the judgments as
reformed.

Factual and Procedural BACKGROUND


 On the afternoon of June 24, 2003, John Robert Norman, a business owner and father of two
children, was arrested. His arrest stemmed from a statement given by N.C. to a police detective the
day before. N.C. was Norman's employee and also a friend of Norman's son. 

 In his sworn statement to police, N.C. affirmed that he had been sexually abused by Norman.
According to N.C., the sexual abuse began around February 2001 and ended around November 2001,
and occurred at various times and locations: while spending the night at the Normans' home, while
riding in Norman's car, and while working at Norman's place of business. 

 Based on N.C.'s sworn statement, Norman was indicted on three counts of sexual assault and
two counts of indecency with a child. Norman pled guilty to all five offenses. After a punishment
hearing, he was sentenced to twenty years in all five cases to run concurrently with restitution as a
condition of parole.

 Norman filed a motion for a new trial, but his motion was denied without a hearing. He then
appealed. On July 6, 2005, in an interlocutory opinion, we held that "the trial court abused its
discretion in failing to conduct a hearing on Norman's motion for a new trial." Norman v. State, Nos.
04-04-00292-CR to 04-04-00296-CR, 2005 WL 1552318, at *2 (Tex. App.--San Antonio 2005).
We abated the appeal and remanded the cause to the trial court for an evidentiary hearing on
Norman's motion for a new trial. Id. at *3. 

 On December 7, 2005, the trial court heard Norman's motion for a new trial. During the
hearing, Norman called his defense counsel and the prosecutor as witnesses. After hearing the
evidence, the trial court denied the motion. After the supplemental appellate record was filed, we
reinstated this appeal on the docket of this court. 

 On October 11, 2006, we issued an opinion sustaining one of Norman's issues and holding
that the trial court's restitution order was not supported by a factual basis. Norman v. State, Nos. 

04-04-00292-CR to 04-04-00296-CR, 2006 WL 2871257, at *3 (Tex. App.--San Antonio 2006).
We then abated the appeal and remanded the cause for a hearing to determine a just amount of
restitution. On February 8, 2007, at the hearing on restitution, the State informed the trial court that
it was abandoning its request for restitution. After the supplemental appellate record was filed, we
reinstated this appeal on the docket of the court. 

Discussion


A. Restitution

 With respect to Norman's first issue, because the State on remand abandoned its request for
restitution, we reform the judgment in cause number 4148 to delete any reference to restitution. (1)

B. Sentences for Indecency with a Child

 In his second issue, Norman argues that the trial court had no authority to sentence him to
twenty years on the two counts of indecency because it had already sentenced him to ten years on
each count. We disagree. The trial court had the authority to modify its sentence pursuant to State
v. Aguilera, 165 S.W.3d 695 (Tex. Crim. App. 2005). 

 At the end of the sentencing hearing on January 8, 2004, the trial court pronounced that it was
sentencing Norman "to thirty years in the penitentiary in each of these five cases" to run
concurrently. The State immediately informed the trial court that thirty years was beyond the range
of punishment for the offenses:

 State: [I]t's a sexual assault, indecency, so maximum is twenty, but does the
Court want those stacked?


 Court: No, I'm sorry, Ms. Kuvasz, I thought we had all five the same. We
have got two twenties and three lifes; is that correct?


 State: No, actually, Your Honor, there's two twenties - three twenties and
two tens, indecency.


 Court: That is my fault; I'm sorry. So we are going to have three twenty-year
sentences and two ten-year sentences, so [it] will be a maximum
sentence in all these cases, and they will run concurrent.


 State: I'm sorry. I think the indecency by contact is also going to be twenty.
It is; they're all twenties, Your Honor.


 Court: All five are twenties?


 State: Yes, Your Honor.


 Court: Correct? Then, Mr. Norman, you are sentenced to twenty years in the
penitentiary in all five cases, and they will run concurrently. 

 According to Norman, the trial court had the authority to modify its first sentence because
it was outside the range of punishment and therefore of no effect. However, Norman claims that once
the trial court announced that it was sentencing him to ten years of imprisonment on the indecency
charges, it had no authority to change the sentence for those offenses to twenty years. In Aguilera,
however, the court of criminal appeals held that a trial court "retains plenary power to modify its
sentence if . . . the modification is made on the same day as the assessment of the initial sentence and
before the court adjourns for the day." Id. at 698. "The resentencing must be done in the presence
of the defendant, his attorney, and counsel for the State." Id. Here, the trial court modified its
sentence on the same day of the initial sentence and before it adjourned for the day. It did so in the
presence of Norman, his attorney, and the State's attorney. Therefore, the trial court did not abuse
its discretion in modifying the sentence. See id. (holding that trial court "was acting within its
authority when, only a few minutes after it had initially sentenced appellee and before it had
adjourned for the day, it modified appellee's sentence").

 We overrule this issue.

C. Extraneous Offenses

 In his third issue, Norman argues that the trial court, during the punishment hearing, erred
in allowing the State to use and introduce evidence of extraneous offenses without first giving timely
notice to the defense. In response, the State argues that because Norman "opened the door," the trial
court did not err in admitting the evidence. We review a trial court's ruling concerning the
admissibility of evidence of other crimes, wrongs, or acts under an abuse of discretion standard.
Montgomery v. State, 810 S.W.2d 372, 387, 391 (Tex. Crim. App. 1991). 

 Before the punishment hearing, Norman filed a motion to exclude extraneous matters,
arguing that despite his requesting notice of extraneous unadjudicated offenses under article 37.07,
section 3(g), of the Texas Code of Criminal Procedure, the State had failed to provide notice. Before
the sentencing hearing, the trial court heard and granted Norman's motion. 

 During opening statement at the punishment hearing, defense counsel stated that Mark
Steege, a clinical social worker with a speciality in sexual abuse and sexual dysfunction, had
evaluated the likelihood of Norman re-offending and found the likelihood to be low: 

 When [Norman] was contacted by law enforcement, he went immediately down to
the police department, voluntarily. He's fully aware of his legal rights. He knew he
had the right to remain silent, not to give them any statement, but he gave a full and
complete statement to law enforcement, admitting every single thing he did and
admitting that everything he did was inappropriate.


 Soon after that, he became involved with Mark Steege, who's done an evaluation.
This was back in August and September. He conducted an evaluation of him. That
evaluation will show that Mr. Norman, a now forty-nine year-old man, this is a
onetime anomaly in his life. Prior to this happening, there's no occurrences of any
inappropriate conduct with any other individual or with this complainant. After it
happen[ed], of course, no inappropriate occurrence happen[ed] with this or any other
complainant. He's been in counseling and therapy on a regular basis ever since that
happened.


(emphasis added).

 Then, during Norman's case-in-chief, defense counsel moved to admit in evidence letters
from individuals. These letters vouched for Norman's good character and attempted to persuade the
trial court to place Norman on community supervision. Many of these letters suggested that
Norman's behavior was a single mistake, not a pattern of behavior. On defense counsel's request,
the trial court admitted the letters in evidence. 

 Additionally, when Mark Steege testified, defense counsel asked Steege, "Is there anything
you have heard today - you have been sitting here [during] the entire proceedings thus far. You have
heard from the complainant. You have heard the tape. Is there anything you have heard today that
would cause you to change your opinion on this matter?" Steege replied, "No, there is nothing."
Later, defense counsel asked Steege whether, considering everything he knew about Norman, there
was a likelihood that Norman would commit the offense again. Steege replied, "I think that the
likelihood of reoffense is very small."

 In response to this evidence, the State argued that defense counsel had "opened the door" to
the extraneous unadjudicated offenses. The trial court agreed. The State then questioned Steege
about his knowledge of the extraneous unadjudicated offenses:

 Q: [Defense counsel] asked you if there was anything you heard that
would cause you to change your opinion. When was the first time you
heard that there was an allegation that this had happened
approximately 60 times and has also happened prior to the victim
turning 15?


 A: I think yesterday.

 Q: Okay, and that doesn't change your opinion?

 A: No.

The State then recalled the victim, who testified that the sexual abuse did not occur only five times.
According to the victim, there were probably twenty-five to thirty different incidents. 

 Texas Rule of Evidence 404 embodies the principle that defendants should not be tried for
being a criminal generally. See Tex. R. Evid. 404(b). Consequently, extraneous offenses are
generally not admissible to prove that committing the charged offense conformed with a defendant's
character. See id. However, extraneous, unadjudicated offenses may be admissible in order to rebut
a defensive theory. Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). By raising a
defensive theory, the defendant opens the door for the State to offer rebuttal testimony regarding an
extraneous offense if the extraneous offense has common characteristics with the offense for which
the defendant is on trial. Jones v. State, 119 S.W.3d 412, 421 (Tex. App.--Fort Worth 2003, no
pet.). The State may then introduce evidence of extraneous offenses through both cross-examination
and rebuttal testimony without notice to defense counsel. Jaubert v. State, 74 S.W.3d 1, 4 (Tex.
Crim. App. 2002). 

 Here, defense counsel put on a mitigation case, arguing that Norman was a good candidate
for probation. Norman's mitigation case raised the issue of his good character and the likelihood of
reoffending. The record reflects that at the beginning of the punishment hearing, Norman's attorney
introduced into evidence character reference letters. Many of these letters suggest that Norman's
behavior was a single mistake and not a pattern of behavior. In his opening statement, defense stated
that "this is a onetime anomaly in his life." Next, Steege testified that Norman is a "responsible
person who did something terribly wrong, he's sorry for it, and I believe has begun what he needs
to do to become once again a responsible, productive citizen." Mr. Steege also testified that "the
likelihood of reoffense is very small." 

 The record demonstrates that Norman advanced the theory that the charged offenses were an
anomaly in his life and that the chance of reoffense was very small. This theory was subject to
rebuttal and cross-examination by the State. The fact that the victim in this case alleged that more
instances had occurred could be seen as relevant to Norman's assertions that the charged offenses
were anomalies in his life and that it was unlikely that he would reoffend. Therefore, the trial court
did not abuse its discretion in allowing the extraneous offenses to be brought into evidence by the
State on cross-examination and rebuttal. 

 We therefore overrule this issue. 

D. Ineffective Assistance of Counsel

 Finally, Norman argues that his defense counsel provided ineffective assistance of counsel.
Norman argues that his trial counsel provided deficient representation by inviting the use of
extraneous offenses, failing to seek a continuance in order to investigate the newly alleged
extraneous offenses, failing to preserve error with respect to the admission of the extraneous
offenses, and allowing the trial court to review the victim impact statement without objecting. (2)

 Because the test for ineffective assistance of counsel is the same under the state and federal
constitutions, both inquiries are subsumed into one. Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex.
Crim. App. 1986). We measure a claim of ineffective assistance of counsel against the two-prong
test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). See
Hernandez, 726 S.W.2d at 55-57 (applying Strickland test). The appellant must first show that his
attorney's performance was deficient, i.e., that his assistance fell below an objective standard of
reasonableness. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Second, assuming
the appellant demonstrates deficient assistance, it is necessary to affirmatively prove prejudice. Id.
In other words, the appellant must show a reasonable probability that, but for his attorney's
unprofessional errors, the result of the proceeding would have been different. Id. A reasonable
probability is a probability sufficient to undermine confidence in the outcome. Id.

 Failure to make the required showing of either deficient performance or sufficient prejudice
defeats the ineffectiveness claim. Id. at 813. Absent both showings we cannot conclude that the
conviction resulted from a breakdown in the adversarial process that renders the result unreliable.
Id. An appellant bears the burden of proving by a preponderance of the evidence that counsel was
ineffective, and we look to the totality of the representation and the particular circumstances of each
in evaluating the effectiveness of counsel. Id. When reviewing a claim of ineffective assistance of
counsel, we must be highly deferential to trial counsel and avoid the "deleterious effects of
hindsight." Id. There is a strong presumption that counsel's conduct fell within the wide range of
reasonable professional assistance. Id.

 Further, the assessment of whether a defendant received effective assistance of counsel must
be made according to the facts of each case. Id. Any allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. Id.
Here, Norman's trial counsel testified at the motion for new trial hearing.

Extraneous Offenses


 Norman argues that his trial counsel was ineffective for inviting the use of the extraneous
offenses, failing to seek a continuance, and failing to preserve any error with respect to extraneous
offenses.

 Trial counsel received notice that the State intended to use allegations of sixty "uncharged,
unadjudicated offenses," on the morning of the day before the sentencing hearing. In response to this
notice, defense counsel filed a motion to exclude extraneous matters. After considering defense
counsel's motion, the trial court gave the State the option of either proceeding with the sentencing
hearing without evidence of the extraneous offenses or giving defense counsel time to prepare. The
State informed the court, "We don't intend to go into those [extraneous offenses] unless the door is
opened to it, which in this case, he wouldn't be entitled to notice." After both defense counsel and
the State agreed to proceed, the trial court granted Norman's motion. However, after resting its case,
the State sought to use the extraneous offenses in cross-examination and rebuttal on the theory that
defense counsel had opened the door. On these grounds, the trial court allowed the extraneous
offenses to be admitted into evidence. 

 In order to preserve error with respect to the admission of the extraneous offenses defense
counsel must make a complaint to the trial court by a timely request, objection, or motion. TEX. R.
APP. P. 33.1(a)(1). Defense counsel properly preserved error for appeal by submitting the motion
to exclude the extraneous offenses, complaining to the trial court, and presenting the motion for a
new trial. Because defense counsel properly preserved error, there is no deficient performance
regarding this allegation. 

 With respect to defense counsel "opening the door," during the motion for new trial hearing,
defense counsel testified that although he did not intend to open the door to the extraneous offenses,
he was aware of the risk associated with his defensive theory: 

 Q: It was certainly your goal at this hearing at all times to prevent admission of
the evidence of the 60 unadjudicated offenses; correct?


 A: We did not want the extraneous offenses admitted.


 Q: And your purpose in proceeding with the hearing was to both do whatever
you could and not split this into two questions - was to do whatever you
could to prevent that evidence of these from coming into evidence; correct?


 A: We did not want to allow those into evidence.


 Q: And you certainly would not have knowingly taken affirmative actions to
allow the State to introduce that which you wanted to exclude; correct?


 A: Well, that is a difficult question, because you don't knowingly seek or intend
to allow those in, but when you put on a mitigation case, you certainly know
that that's a risk and a potential possibility.


***



 Q: Okay. In an affidavit that is attached to the motion for new trial, you
indicate it was not your intent to open the door to the extraneous
matters. Can you explain to the Court what you meant by that?


 A: Well, it wasn't my conscious objective and I didn't set out to allow in
extraneous offenses. I mean, that would be ridiculous for me to do so or to
intentionally seek to allow those in. However, we all know that that's a
possibility and a potential risk you run every time you put on a mitigation
case, so the benefit of the mitigation case far outweighed the risks of these
extraneous offenses.


 Defense counsel further testified as to why, in light of these extraneous offenses, he did not
seek a continuance:

 Q: Okay. Is that [i.e. the risk of letting in extraneous offenses] something you
took into consideration and discussed with the Defendant the morning of the
punishment hearing prior to asking for a continuance?


 A: Yes, we had a lot of discussion during that morning. I believe that was part
of it. The other part of the continuance is that issue did arise. The trial court
asked the State whether or not they wanted a continuance, and we had some
input into that or we had discussions at our table, and the consensus was
don't get a continuance. We had gotten the family there from all over the
country. What good would it do to have that additional time to try to
investigate these? It's uncorroborated statements from the Complainant that
we already have inconsistent testimony from, and I think the conversation
even came up that that might allow the State to corroborate them and we
don't have the opportunity, so we decided it was not a good idea for a
continuance.


 Q: Okay, so it was trial strategy. You did take into consideration the possibility
that putting on mitigation evidence might open the door to extraneous?


 A: Sure, we all know that. Every defense attorney who practices in Texas knows
that that's a possibility.


 Q: So your intent was, is it not true, to take that risk, but then argue that the door
had not been opened?


 A: Well, sure, you are going to make your argument twofold. You are always
going to argue not to open the door, but if you do, you have to deal with the
potential consequences, if the trial court determines that you have, of what
the detrimental effect of that is, and if it had been other complainants that
were corroborated, and certainly our decision may have been different, but it
was this same Complainant, who had at the eve of sentencing comes up with
60 uncorroborated, contradictory offenses or incidents. To me, it hurt the
Complainant's credibility.


 Based on the record, defense counsel acted within the wide range of reasonable professional
assistance. Defense counsel's decision to mount a mitigation defense and his decision to proceed
with the sentencing hearing without a continuance were both reasonable strategic decisions. The
record does not demonstrate that defense counsel's actions were so lacking in tactical or strategic
decisionmaking as to overcome the presumption that counsel's conduct was reasonable and
professional. Therefore, because defense counsel's performance was neither deficient for opening
the door to extraneous offenses nor for opting not to seek a continuance, Norman's first two
allegations of ineffective assistance of counsel are without merit.

Admission of the Victim Impact Statement


 Norman also argues that defense counsel improperly allowed the trial court to view the victim
impact statement before the court had found him guilty. We disagree.

 On December 12, 2003, at the plea hearing, Norman entered a plea of guilty in all five cases.
The trial court accepted his plea and found sufficient evidence to find him guilty in all five cases.
The trial court then reset the case for a punishment hearing. On January 8, 2004, the trial court heard
evidence regarding punishment. At the end of the hearing, the State offered the victim impact
statement, which the trial court reviewed before sentencing Norman.

 Norman argues that at the time the trial court reviewed the victim impact statement, it had
not as of yet found him guilty. It had only found the evidence sufficient to find him guilty. Thus,
Norman argues that pursuant to article 56.03(f) of the Texas Code of Criminal Procedure, the trial
court improperly reviewed the victim impact statement before finding him guilty. And, Norman
argues his trial counsel was deficient in failing to object to the trial court reviewing the statement. 

 Article 56.03 sets forth the procedures to be observed in relation to the victim impact
statement. Subsection (f) provides the following:

 The court may not inspect a victim impact statement until after a finding of guilt or
until deferred adjudication is ordered and the contents of the statement may not be
disclosed to any person unless: (1) the defendant pleads guilty or nolo contendere or
is convicted of the offense . . . .


TEX. CODE CRIM. PRO. ANN. art. 56.03 (f) (Vernon 2006) (emphasis added). 

 Here, at the time the trial court inspected the victim impact statement, Norman had already
pled guilty to the offenses. Because Norman had pled guilty, the trial court, pursuant to article
56.03(f), had authority to review the statement. See Berry v. State, 66 S.W.3d 402, 404 (Tex.
App.--Austin 2001, no pet.) (holding that trial court, in reviewing victim impact statement even
though it had not yet pronounced the appellant guilty, did not violate section 56.03(f) because
appellant had pled guilty to the offense); Watson v. State, 974 S.W.2d 763, 765 (Tex. App.--San
Antonio 1998, pet. ref'd) (explaining that appellant's argument that trial court erred by admitting
victim impact evidence before a finding of guilt because article 56.03(f) "does not bind the court
where the defendant pleads no contest"). Therefore, the trial court did not err in reviewing the victim
impact statement, and trial counsel was not deficient in failing to object.

 We therefore hold that Norman was not denied effective assistance of counsel and overrule
this final issue.

Conclusion


 As modified, we affirm the judgments of the trial court.


 Karen Angelini, Justice

Do not publish

1. The trial court ordered restitution as a condition of parole only with respect to cause number 4148. 
2. We note that Norman also argued his trial counsel was deficient for failing to object to the restitution award.
However, because we have deleted any reference to the restitution award in the judgment, we need not address this issue.