

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1187-07

**IVAN JOHNSON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### LLANO COUNTY

**KELLER, P.J., filed a dissenting opinion in which HERVEY, J., joined.**

Before the victims' statements were made in this case, the trial judge orally imposed (1) the sentence, (2) the standard conditions of community supervision, and (3) the sex-offender conditions of community supervision. After the victims' statements, the judge imposed additional conditions of community supervision. Because the law allows a trial judge to impose new conditions of community supervision at any time, and the trial judge in this case stated that he was not influenced by the victims' statements, I would hold that the trial judge committed no error.

The precise language of the victim-allocution statute is important, but the Court never quotes it. Article 42.03 does not, in fact, say that any victim-allocution statements must be made after the trial judge announces the conditions of community supervision.[1] But even if the statutory language were construed to encompass conditions of community supervision that are part of the judgment, we must also consider the effect of the statute that actually does control community supervision.

The community supervision statute contains a general provision that allows the trial judge to alter or modify the conditions of community supervision "at any time, during the period of community supervision."[2] Though the statute provides that any condition imposed be "reasonable," it does not contain any language requiring a new factual basis for imposing a new condition.[3] A more specific provision in the statute allows the trial judge to "impose confinement as a condition

---

[1] Article 42.03 provides that a victim allocution statement must be made:

(1) after punishment has been assessed and the court has determined whether or not to grant community supervision in the case;

(2) after the court has announced the terms and conditions of the sentence; and

(3) after sentence is pronounced.

TEX. CODE CRIM. PROC. art. 42.03, §1(b). The Court claims that article 42.03 is "unambiguous," but, contrary to *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991), the Court applies the statute to "conditions of community supervision," though that term does not appear in the statute. Article 42.03 says only that statements must be made after the decision on whether to *grant* community supervision is made, after the terms and conditions of the *sentence* have been announced, and after *sentence* is pronounced. In the same chapter, the Legislature defined the term "sentence," and we have relied upon that definition to hold that the term "sentence" does *not* include the conditions of community supervision. *Speth v. State*, 6 S.W.3d 530, 532, 532 n.4 (Tex. Crim. App. 1999)("The sentence and the conditions of community supervision are each separate parts of the 'judgment.'" Citing TEX. CODE CRIM. PROC. art. 42.02).

[2] TEX. CODE CRIM. PROC. art. 42.12, §11(a).

[3] *See id.*

of community supervision . . . on placing the defendant on supervision or at any time during the supervision period."[4]

"At any time" is broad, unambiguous language. Its plain meaning includes events occurring on the same day that the judgment is pronounced. Indeed, the purpose section of the community supervision statute indicates an intent to confer the broadest possible flexibility on a trial judge in overseeing a person's community supervision:

> It is the purpose of this article to remove from existing statutes the limitations, other than questions of constitutionality, that have acted as barriers to effective systems of community supervision in the public interest.[5]

This broad grant of authority would seem to include the authority to impose additional conditions of community supervision, even when the announcement of those conditions follows on the heels of an orally pronounced judgment, and victim-allocution statements made pursuant to article 42.03.

The Court contends that the 180-days-in-jail condition was not an amendment to the original conditions of community supervision because it was contained in the original written judgment.[6] But our caselaw says that the oral pronouncement of sentence controls over the written judgment,[7] and the oral pronouncement in this case was facially complete at the time it was made. The 180-days-in-jail condition was not part of the trial court's original, oral pronouncement of judgment. In any event, the court of appeals's harm analysis seems correct: the trial court had the power to modify conditions of probation at any time, so it makes little or no difference whether, technically, the trial

---

[4] *Id.*, §12(c).

[5] TEX. CODE CRIM. PROC. art. 42.12, §1.

[6] Court's op. at 7.

[7] *Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005).

judge modified the judgment or amended the conditions.

Relying by analogy upon *Batson v. Kentucky*,[8] the Court contends that a trial court cannot impose jail time as a condition of community supervision "for any other statutorily prohibited reason."[9] But the Court reads into the statute something that is not there. No statute prohibits a trial court from amending the conditions of probation based upon a victim-allocution statement. What the Court does here is impose a nonstatutory, prophylactic rule designed to implement what it sees as the purpose of the victim-allocation statute.[10] It is questionable whether a *Batson*-type rule, which proscribes conduct that directly violates the United States Constitution,[11] should apply to a nonconstitutional, nonstatutory, prophylactic rule designed to effectuate the purpose of a statute.

Not only does the Court impose a *Batson*-type rule with far less justification than in the *Batson* context, but the rule imposed is in fact far more sweeping than *Batson*. Under *Batson*'s three-pronged approach, when the party alleging a *Batson* violation establishes a prima facie case, the opposing party has the opportunity to offer a race-neutral reason for the strike, and if one is given, then the moving party has the burden of showing intentional discrimination.[12] But the Court's *Batson*-like rule has only one prong: once the defendant establishes a prima facie case, the Court

---

[8] 476 U.S. 79 (1986).

[9] Court's op. at 8.

[10] The Court holds that the whole purpose of Article 42.03 is to avoid the appearance of judicial partiality. But the legislative intent in enacting the statute related not to the appearance of partiality but to the actual fact of partiality. *See State v. Aguilera*, 165 S.W.3d 695, 706 (Tex. Crim. App. 2000)(Keasler, J. dissenting)(quoting *Garcia v. State*, 16 S.W.3d 401, 408 (Tex. App.– El Paso 2000, pet. ref'd.)).

[11] 476 U.S. at 86-87.

[12] *Rice v. Collins*, 546 U.S. 333, 338 (2006).

imposes an irrebuttable presumption of impropriety. The Court claims that it does not doubt the sincerity of the trial judge when he specifically stated that the victim-allocution statements did not affect his decision, but the Court finds the trial judge's statement to be irrelevant to its truncated *Batson*-like analysis. A neutral explanation would be relevant to a true *Batson* inquiry, especially when accompanied by objective facts in the record. Here, the trial judge gave specific reasons that support his statement that he was not influenced by the victim-allocution statements: he remarked that he had not yet imposed the specific conditions he intended to impose and that he could have logically deduced from the evidence most of what was read in the victim statements. And the record reflects that the trial judge imposed another post-allocution condition of community supervision that no one claims was a result of the victim-allocution statements: the sale of appellant's home.[13]

As article 42.12, §1 explains, the legislature intended to give trial courts broad authority to determine what conditions of community supervision were appropriate. The Court, however, imposes a judicially-created prophylactic rule that restricts a trial court from doing just that. I respectfully dissent.

Filed: June 17, 2009
Publish

---

[13] The Court claims that appellant did not object to this condition because "the evidence at the punishment hearing showed that he had already moved away." Court's op. at 3 n.6. But the Court cites no evidence from the record to support this proposition. Instead, the Court cites defense counsel's argument to the jury that appellant was "going to sell the home" and had "no intention of ever going back to Sandy Harbor." Defense counsel's argument to the jury is not evidence. *See Hutch v. State*, 922 S.W.2d 166, 173 (Tex. Crim. App. 1996)(plurality op.)("It is axiomatic that jury arguments are not evidence"). Even if it were, defense counsel's statement does not reflect that appellant had already moved away but that he intended to do so. The trial court's condition ensured that appellant would follow through on this expressed intention.