

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1187-07

**IVAN JOHNSON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### LLANO COUNTY

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, and HOLCOMB, JJ., joined. KELLER, P.J., filed a dissenting opinion in which HERVEY, J., joined. KEASLER, J., filed a dissenting opinion in which KELLER, P.J., and HERVEY, J., joined.

## OPINION

Appellant asks whether a trial judge has the discretion to impose jail time as a condition of community supervision immediately after he has heard unsworn, un-cross-examined victim-allocution statements that they wanted appellant to go to jail.[1] The answer

---

[1] Appellant's sole ground for review is:
The court of appeals erred in holding that a trial court can, under Article 42.12 § 12(c) of the Code of Criminal Procedure, modify the conditions of a defendant's probation to require 180 days in jail after victim allocution under Article 42.03 § 1(b) of the Code of Criminal Procedure.

is no. The pertinent statute is both clear and explicit: Article 42.03 requires that the victim-allocution statement be read *after* the sentence has been imposed and "*after* the court has announced the terms and conditions of the sentence."[2] This error was not harmless. We therefore reverse the court of appeals, which had held that error, if any, was harmless because the trial court retained authority to modify and amend the conditions of probation at any time during the period of community supervision.[3]

I.

In this case, appellant was charged with two counts of indecency with a child. The jury acquitted him of the count involving Savannah, but convicted him of the count involving Brittany. The jury then assessed his punishment at five years' imprisonment and a fine of $5,000, but further recommended that both the fine and the imprisonment be probated and that appellant be placed on community supervision. The trial judge accepted the jury's punishment verdict and imposed the "standard" conditions of community supervision, including sex-offender registration. After the judge completed his oral pronouncement of the sentence and community supervision conditions,[4] he permitted the mothers of both

---

[2] T EX. CODE CRIM. PROC. art. 42.03, § 1(b)(2) (emphasis added).

[3] *Johnson v. State*, 240 S.W.3d 76, 79 (Tex. App.—Austin 2007) ("The court below was and remains authorized to impose jail time as a condition of appellant's community supervision at any time during the five-year supervision period. Under the circumstances, if the court's determination to impose the jail time condition was made after the victim statements were made, it was at most harmless error.").

[4] The record shows that the trial court completed his sentencing before the allocution statements.
Court:          This trial began on Monday, the 25th of September. It is concluded today, which

children to give an oral allocution statement in open court pursuant to Article 42.03, § 1(b). Brittany's mother also read Brittany's statement out loud. Then the trial judge read a statement written by Savannah out loud, even though appellant had been acquitted of molesting her.[5]

Immediately thereafter, the trial judge imposed additional conditions of probation, including the requirement that appellant sell his home[6] and that he serve 180 days in the county jail. Appellant objected; he filed a bill of exceptions because Article 42.03 prohibits the court reporter from recording victim-allocution statements;[7] and he obtained an adverse

---

|  | is September 28th with the jury assessing punishment at five years probation and a fine of $5,000, probated also. Know of any legal reason why we shouldn't pronounce sentence, [defense counsel]? |
|---|---|
| Defense: | No. |
| Court: | State? |
| State: | The State has no reason. |
| Court: | Then it is the sentence of this Court that you be placed on probation for a term of five years and a fine of $5,000 that will be probated also. You will be placed upon the standard conditions of probation and the ones [that] apply to sex offenders. You'll also have to register as a sex offender. |
|  | . . . |
|  | So that will be the sentence of the Court. |

[5] When reading the punishment charge to the jury, the trial judge had admonished the jury that they "cannot consider the evidence about the other girl, [Savannah] that y'all did not find him guilty of." The court of appeals noted, "In light of appellant's acquittal on count one, one might question whether [Savannah] was a victim within the meaning of article 42.03. Appellant does not raise this issue, and we express no opinion on the matter." *Johnson*, 240 S.W.3d at 78 n.2.

[6] Appellant did not object to this condition because the evidence at the punishment hearing showed that he had already moved away. Defense counsel told the jury that "he's going to sell the home, sell his house. He has no intention of ever going back to Sandy Harbor."

[7] TEX. CODE CRIM. PROC. art. 42.03, § 1(b) ("The court reporter may not transcribe the [victim's post-sentencing] statement").

ruling from the trial court.[8]  He properly preserved error.

II.

The court of appeals correctly noted that Article 42.03 allows "a victim statement only after sentencing in order to alleviate any risk that the statement might affect the partiality of the fact finder at the punishment phase."[9]  This statute is not ambiguous or difficult to understand.  The statute says that the victim's statement "must be made . . . after the court has announced the terms and conditions of the sentence; and after sentence is pronounced."[10]

---

[8] Appellant's counsel objected as follows:

| | |
|---|---|
| Defense: | Judge, before the victims and their mothers were allowed to allocute, the law requires that you impose sentence before allocution takes place, and you did impose sentence earlier, and you did not impose a condition of probation of jail. It is improper for the Court to sit–not only sit through and listen to it, but you actually read one of the victim's statements.  And to then come in after that and re-impose sentence and– |
| Court: | I didn't impose the terms and conditions of probation, though.  I didn't impose any terms and conditions of probation at that point in time. |
| Defense: | Well, we object to–we object to you imposing a condition of 180 days after you allowed the victims to allocute and you yourself read one of the victim's statement.  That is totally what–that's exactly what the law is designed to prevent is for you from being swayed by what may have been inadmissible evidence and then go back and sentence the defendant and we object to that. |
| Court: | And I think the Court presumes that–the appellate court presumes that the trial court does not consider inadmissible evidence, but this Court sat through the whole trial and heard all of the evidence that was in the trial, which clearly included what I read and what basically was stated.  I mean, the Court could logically deduce most of what was read in that victim impact statement.  That did not influence this Court to determine to sentence him to 180 days in the county jail because I had not imposed what conditions of probation I was going to impose.  I just read that's what the jury did and they recommended it be probated. |

[9] *Johnson*, 240 S.W.3d at 78.

[10] TEX. CODE CRIM. PROC. art. 42.03, § 1(b) & (b)(2) & (b)(3).

Only after the entire sentencing procedure is complete[11]–when it is not possible for anyone to think that unsworn, uncross-examined testimony could affect the trial judge's sentencing– may the victim deliver a statement to the defendant, the court, and the public.  The term "after sentence is pronounced" does not mean that a first sentencing is a prelude to a second sentencing after the victim-allocution statement.

It is widely acknowledged by commentators that victim-allocution statements are to have "no effect" upon the jury or judge's decision making.[12]  What does "no effect" mean?

---

[11] *See Gifford v. State*, 980 S.W.2d 791, 793-94 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (finding reversible error when the defense attorney failed to object to the victim's father's unsworn victim-allocution statement given before the trial judge assessed punishment, and stating that, under Article 42.03, "the legislature has severely limited the use and impact of the statement by requiring that it be made *after punishment has been assessed*.").

[12] *See* 43 GEORGE E. DIX AND ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 38.84 (2d ed. 2001) (victim allocution "is intended to have no effect on decisions made in the criminal process"); D. MARK ELLISTON, 2 TEXAS PRACTICE GUIDE: CRIMINAL PRACTICE AND PROCEDURE § 25:49 (2007) ("An oral victim [allocution] . . . is an opportunity for the victim to vent his or her feelings. . . . The statement is not evidence and . . . is intended to have no effect on decisions made in the criminal process"); KEN ANDERSON AND JOHN BRADLEY, TEXAS SENTENCING § 10.2[b][6] (5th ed. 2007) ("After a judge has pronounced sentence or imposed conditions of community supervision, a victim may appear in person and tell the judge the victim's views about the offense, the defendant, and the effect of the offense on the victim."); Andrew L. Johnson, *Sentence Modification in Texas: The Plenary Power of a Trial Court to Alter Its Sentence After Pronouncement,* 38 ST. MARY'S L.J. 317, 358-60 (2006) (noting that victim-allocution statements are "one-sided affairs that may not be transcribed" and provide "the crime's victims an ability to address the court after the sentence is pronounced.").

As one commentator explained, the original victim allocution bill, House Bill 520, was intended

> to allow crime victims to give such a statement before sentence pronouncement. However, there was concern expressed at the legislative hearings that victim allocution statements might have an impact on sentencing.  Legislators amended the proposed Bill by allowing allocution only after sentence pronouncement. Thus, the legislature intended to place victim allocution statements after the trial judge's pronouncement of the sentence to avoid any chance that the statement would affect the sentence given.

Does it mean that the trial judge may not increase the literal sentence, but he may add whatever new terms and conditions he thinks appropriate based upon the unsworn, uncross-examined victim-allocution statements? No. The whole purpose of requiring that these statements be made after the sentencing stage is complete is to protect the trial judge and the justice system from charges of partiality or any suggestion that these unsworn, uncross-examined statements can or will sway the sentencing authority in any respect whatsoever.

The timing of a victim's allocution statement was obliquely addressed by two members of this Court in a concurring opinion in *State v. Aguilera*,[13] and directly addressed by two other judges in a dissenting opinion in *Aguilera*.[14] Although four members of the Court have previously stated that a trial judge commits error if he changes, modifies, or alters his sentence or the conditions of community supervision immediately after hearing a victim-allocution statement,[15] this is an issue of first impression for the Court as a whole.[16]

---

Johnson, *Sentence Modification in Texas*, 38 St. Mary's L.J. at 360 (footnotes omited).

[13] 165 S.W.3d 695, 699, 703 (Tex. Crim. App. 2005) (Cochran, J., concurring, joined by Price, J.) (stating that a trial judge's decision to resentence a defendant would be "illegal" if it "was based upon a statutorily prohibited consideration of the victim impact sentence," but noting the Court could not address that question because it was not presented in the State's appeal).

[14] 165 S.W.3d at 706 (Keasler, J., dissenting, joined by Hervey, J.) ("[The] 'Legislature specifically enacted Article 42.03 to allow victim statements only after sentencing in order to alleviate any risk that the statement would affect the partiality of the fact finder at the punishment phase'") (quoting *Garcia v. State*, 116 S.W.3d 401, 408 (Tex. App.—El Paso 2000, pet. ref'd)).

[15] Here, as in *Aguilera*, the fact that the modification of appellant's conditions of community service came immediately on the heels of the trial court's reading of the victim's allocution statement appears more than fortuitous. As Judge Keasler noted in his *Aguilera* dissent:
This statement defies credibility. It is remarkably coincidental that the judge

The court of appeals avoided this issue by holding that it was at most harmless error because the trial court retained authority to modify or amend the conditions of probation at any time during the period of community supervision.[17]  There are two problems with this conclusion.

First, the trial judge did not modify or amend the conditions of community supervision.  Indeed, the trial judge said that he was "imposing" jail time as a part of the "terms and conditions of probation;" he did not state that he was "amending" or "modifying" his original probation conditions.[18]  The "180 days in jail" condition was made part of the original written judgment and was signed on the same day as the original sentencing.  The only intervening event between the original pronouncement of sentence and conditions of community supervision and the pronouncement of the "180 days in jail" condition was the victim-allocation statements asking for the appellant to go to jail.  After the defense attorney objected to the imposition of this post-allocution condition, the trial judge stated that he

---

chose to reduce [the defendant's] sentence right after hearing the victim's statement.  I cannot condone this type of behavior.  It seems an obvious attempt to circumvent Art. 42.03.

165 S.W.3d at 706 (Keasler, J., dissenting).

[16] In *Aldrich v. State*, ___ S.W.3d ___, No. 2-05-303-CR, 2008 WL 5057647, at *29-31 (Tex. App.—Fort Worth Nov. 26, 2008, no pet. h.), the Fort Worth Court of Appeals held that it was harmful error, in violation of article 42.03, for the victims to give unsworn victim-allocution statements before the trial court assessed punishment.  *See also Gifford*, 980 S.W.2d at 793-94 (ineffective assistance of counsel when counsel failed to object as victim's father gave an unsworn allocation statement before punishment was assessed).

[17] *Johnson*,  240 S.W.3d at 79; *see* note 3 *supra*.

[18] *See* note 8 *supra*.

would modify the sentence to delete this condition if the defense could show him that it was illegal.[19]

Second, the court of appeals's "no harm, no foul" reasoning fails to acknowledge the "any reason except a prohibited one" rule. The trial court does indeed retain authority to impose confinement in jail as a condition of community supervision "at any time during the supervision period." Unless prohibited by law, he may do so for any reason and perhaps for no reason. But just as a judge may not impose jail time as a condition of community supervision solely because of the defendant's race,[20] he may not impose jail time as a condition of community supervision for any other statutorily prohibited reason. If a litigant is prohibited from making peremptory challenges based on a venireman's race, it is constitutional error for him to do so; it is of no moment that there might be other valid reasons for striking that venireman if the party did, in fact, make his strike based on race. If the trial judge is not permitted to amend the conditions of probation based on the victim's allocution statements, it is of no moment that he could have later amended those same conditions based on a valid reason.

---

[19] The trial judge stated:
I'll tell you what we'll do. I'm going to leave my sentence intact. You can file–you can file a legal motion to show me that I can't do that legally. And if I can't do that legally, then I'll file a judgment nunc pro tunc and amend the conditions of probation where he doesn't have to do 180 days.

[20] *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (although a prosecutor is ordinarily entitled to exercise his peremptory strikes for any reason, he may not challenge jurors solely on account of their race).

III.

We do not doubt the sincerity of the trial judge in this case. He stated, on the record, that he did not modify appellant's sentence because of any influence caused by the reading of the victim-allocution statements.[21] But the purpose of article 42.03, § 1(b) is to protect the trial judge from any implicit or explicit accusations that he could be or would be influenced by the victim-allocution statement. It is the appearance of possible influence, as much as the possible fact of influence, that the statute guards against.

Although the trial judge erred by violating the express terms of article 42.03, we are confidant that the honorable judge will do what he promised to do if he knew that his imposition of the "180-days-in-jail"condition was illegal: Delete it from the judgment. If the trial judge finds that appellant is a less than perfect probationer, he may always amend the conditions of community service to include jail time as long as that condition is not inextricably connected to the victims' allocution statements asking for jail time.

We therefore reverse the judgment of the court of appeals and remand this case to the trial court for further proceedings consistent with this opinion.

Delivered: June 17, 2009

Publish

---

[21] *See* note 8 *supra*.