*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# OPINION

No. 04-10-00513-CR

Austin George **PATTERSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

No. 04-10-00523-CR

The **STATE** of Texas,
Appellant

v.

Austin George **PATTERSON**,
Appellee

No. 04-00572-CR

Jordan **MITCHELL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2008CR4841B & 2008CR4841A
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:      Karen Angelini, Justice
                Steven C. Hilbig, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  August 24, 2011

AFFIRMED AS MODIFIED

These three consolidated appeals arise from judgments of conviction and sentences for the offenses of cruelty to nonlivestock animals. Austin George Patterson and Jordan Mitchell each pled guilty to three counts of cruelty to nonlivestock animals and were sentenced to three years' imprisonment. In their appeals from these convictions, Patterson and Mitchell ("appellants") argue the deadly weapon allegations in their indictments should have been set aside by the trial court because they were facially invalid. In its appeal, the State argues the trial court had no authority to modify Patterson's sentence from eight years' imprisonment to three years' imprisonment, even though it did so in open court with all parties present and while it still had plenary power. We overrule all of the issues presented in these appeals, modify Patterson's judgments to show he pled guilty rather than nolo contendere, and affirm the judgments as modified.

## BACKGROUND

On September 16, 2007, a police officer found three dead cats on a road in Universal City, Texas. The cats were gray in color, and appeared to have been tortured. Next to the dead cats was a plastic tub containing a large kitchen knife, a rubber mallet, and a claw hammer. Outside the tub was a box cutter. These tools appeared to have gray cat hair and blood on them. A pair of scissors was also found at the scene. A police investigation led to Patterson's and Mitchell's arrests.

Appellants were indicted separately for three counts of cruelty to nonlivestock animals; however, the allegations in their indictments were the same. Two counts alleged appellants intentionally and knowingly in a cruel manner killed a cat by cutting and stabbing the cat with a knife, a box-cutter, and a sharp object unknown to the grand jurors; one count alleged appellants intentionally and knowingly in a cruel manner killed a cat by striking the cat with a hammer, a mallet, and an object unknown to the grand jurors. The indictments also alleged that during the commission of the offenses, appellants used and exhibited deadly weapons, specifically, a knife, a box-cutter, a hammer, a mallet, and other objects unknown to the grand jurors.

Appellants filed pretrial motions to quash their indictments.[1] In these motions, appellants argued, among other things, that the indictments' deadly weapon allegations were inapplicable to the offense of cruelty to nonlivestock animals. The trial court held hearings on appellants' motions to quash, at which argument, but no evidence, was presented. Citing several sections of the Texas Penal Code, appellants argued the deadly weapon allegations were inapplicable to the offenses charged and, as a consequence, the deadly weapon allegations in the indictments were facially invalid. The State opposed appellants' proposed construction of the penal code, arguing the deadly weapon allegations were indeed applicable to the offenses charged. The State also contended the deadly weapon allegations were warranted based on the death of and serious bodily injury to the cats. After considering the arguments presented, the trial court denied the motions to quash.

Appellants later pled guilty to the allegations in the indictments. Appellants had no agreements with the State as to punishment. At the plea hearings, the trial court acknowledged appellants retained the right to appeal rulings on any written motion made prior to the entry of

---

[1]Patterson's motion was titled "Defendant's Motion to Set Aside the Indictment," and Mitchell's motion was titled "Motion to Quash Indictment." We will refer to both motions as motions to quash the indictment.

their pleas. Notwithstanding the arguments raised in their motions to quash, appellants pled "true" to the deadly weapon allegations in their respective indictments.

The trial court held a punishment hearing for Patterson and sentenced him to eight years' imprisonment on each count of the indictment. These sentences were to run concurrently. Thereafter, the trial court held a punishment hearing for Mitchell and sentenced him to three years' imprisonment on each count of the indictment. These sentences were to run concurrently. The trial court then signed judgments of conviction, which include deadly weapon findings and, because of the deadly weapon findings, the offenses were enhanced from state jail felonies to third degree felonies.

Before the trial court's plenary power expired, Patterson filed a motion for reconsideration, arguing the trial court should modify his sentences by placing him on deferred adjudication. The trial court held a hearing on Patterson's motion for reconsideration, explaining that "there really [was] no legal procedure" "for this motion," and it was "purely a discretionary matter that the court has jurisdiction for 30 days." After hearing argument from Patterson's counsel, the trial court stated,

> Mr. Patterson, I guess I have the benefit now of the sentencing on your co-[d]efendant, because reading the record, it appeared like you were the ringleader, you were the mastermind…
>
> But having heard from your co-[d]efendant, I really can't distinguish from your conduct and his conduct as far as culpability. You both, in my opinion, are equally as culpable. He is no less and you are no more…
>
> ***
>
> But I think it's appropriate, based upon what I heard in the co-[d]efendant's [hearing], to punish you the same.
>
> So I'm going to assess a three-year term, just like I did with your co-[d]efendant.

The trial court then signed new judgments, reflecting Patterson's modified sentences. These judgments of conviction include deadly weapon findings, and show the offenses to be third degree felonies.

STATE'S PRELIMINARY ARGUMENTS

On appeal, appellants argue the deadly weapon allegations in their indictments were not applicable to the offenses charged, and therefore, the trial court erred in denying their motions to quash these allegations. Before addressing the merits of this argument, the State argues appellate review of this issue is precluded for two reasons. First, the State contends appellants may not appeal the trial court's rulings denying the motions to quash because the arguments presented in these motions amounted to an impermissible pretrial testing of the State's evidence. Second, the State contends appellants are estopped from challenging the trial court's denials of their motions to quash because they induced the trial court to include the deadly weapon findings in their judgments.

### A. Pretrial Testing of the Evidence

"An indictment must be facially tested by itself under the law, as a pleading; it can neither be supported nor defeated as such by what evidence is introduced on trial." *State v. Rosenbaum*, 910 S.W.2d 934, 948 (Tex. Crim. App. 1994) (opinion adopting dissent on rehearing). According to the State, appellants' arguments were not properly presented in a motion to quash because they essentially sought to test the sufficiency of the evidence to support the indictments. *See Lawrence v. State*, 240 S.W.3d 912, 916 (Tex. Crim. App. 2007) (concluding the trial court's refusal to grant a motion to quash was not error when motion attacked the sufficiency of the State's evidence to support the result element of the offense); *Woods v. State*, 153 S.W.3d 413, 415 (Tex. Crim. App. 2005) (concluding the statutes

authorizing pretrial proceedings do not contemplate a "mini-trial" on the sufficiency of the evidence to support an element of the offense).

In his motion to quash, Patterson alleged the deadly weapon allegations in the indictment were not applicable to the offenses charged. Similarly, in his motion to quash, Mitchell argued that under a "plain reading" of the Texas Penal Code, a deadly weapon must be "used toward" another *person*, rather than an *animal*. The record further shows appellants adhered to these statutory construction arguments at the hearing. Thus, appellants did not seek to test the evidence to support the deadly weapon allegations in the trial court.

On appeal, appellants reiterate their arguments that specific provisions of the penal code precluded the State from alleging the use of a deadly weapon. However, Mitchell also makes a number of arguments concerning the sufficiency of the evidence. For example, Mitchell argues, "A deadly weapon finding is only supported by legally sufficient evidence if the State shows, beyond a reasonable doubt, not only the nature of the instrument, but also that a human life was actually placed in harm's way. A theoretical risk of possible harm is not legally sufficient to sustain a deadly weapon finding." Mitchell further argues, "the State did not allege, nor did the evidence show, that there was ever any person placed in danger of serious bodily injury or death as a result of the use of a box cutter, knife, or mallet." To the extent appellants ask us to evaluate the sufficiency of the evidence to support the deadly weapon findings, we conclude appellants' complaints are not reviewable in an appeal from a ruling on a motion to quash. Similarly, to the extent appellants' arguments require us to make assumptions about the facts surrounding the commission of the offenses, we conclude appellant's complaints are not reviewable in an appeal from a ruling on a motion to quash. As a result, we refrain from addressing these arguments.

On the other hand, to the extent appellants ask us to review their facial, legal challenges to the deadly weapon allegations in the indictments that are not dependent upon the facts surrounding the offenses, we conclude appellants' complaints are reviewable. *See Rosenbaum*, 910 S.W.2d at 948 (providing indictment may be facially tested under the law as a pleading); *Fullbright v. State*, 818 S.W.2d 808, 809-10 (Tex. Crim. App. 1991) (concluding appellate court erred by holding appellant could not challenge trial court's failure to quash enhancement paragraphs on appeal); *cf. State v. Vasilas*, 253 S.W.3d 268, 270-73 (Tex. Crim. App. 2008) (reviewing trial court's ruling on motion to quash based on statutory construction arguments).

### B. Estoppel

A party may be estopped from asserting a claim on appeal that is inconsistent with that party's prior conduct. *Arroyo v. State*, 117 S.W.3d 795, 798 (Tex. Crim. App. 2003). The State contends appellants are estopped from challenging the trial court's denials of their motions to quash because they led the trial court to believe there was an agreement that the deadly weapon findings should be included in the judgments. In support of this argument, the State points to parts of the record showing the appellants pled guilty and judicially confessed to the offenses alleged in the indictments, including the deadly weapon paragraphs, without reservation.[2]

Nevertheless, a comprehensive review of the records leads us to conclude appellants' claims on appeal are not inconsistent with their conduct in the trial court. At Patterson's plea hearing, the trial court informed Patterson, "[W]e did have a hearing on a pre[trial] issue, so any written motions prior to the entry of the plea, you would also have the ability to appeal that."

---

[2]In Patterson's case, the State also asserts Patterson's plea was the result of a plea bargain agreement. According to the State, Patterson agreed to accept the deadly weapon findings in his judgments in exchange for the State's agreement to (1) waive a jury trial, (2) allow Patterson to enter an open plea, and (3) allow Patterson to request deferred adjudication. In Mitchell's case, the State also asserts there was an agreement that the enhancement allegations were true, but no plea bargain agreement. The records before us do not affirmatively show the existence of such agreements.

Later, the trial court stated, "so you would have the opportunity to appeal the jurisdictional defects, and, in addition, the specific ruling on that motion." At Mitchell's plea hearing, the trial court initially advised Mitchell there was no appeal for him; however, Mitchell's counsel clarified that this was "[o]ther than the pretrial motion that we filed on the indictment." In response, the trial court confirmed Mitchell could appeal the ruling on the pretrial motion heard prior to the entry of plea. The trial court later signed certifications stating the appellants' cases were not plea bargain cases and appellants had the right to appeal.

Although appellants pled "true" to the deadly weapon findings in their indictments, they did so only after their legal arguments about the deadly weapon allegations were rejected by the trial court, and the trial court confirmed appellants would in fact have the right to appeal the pretrial rulings. Moreover, by stipulating to the evidence and by pleading "true" to the deadly weapon findings, Patterson and Mitchell did not indicate their intent to abandon their argument about the legality of the deadly weapon findings. Taken as a whole, we cannot say appellants' complaints on appeal are inconsistent with their positions in the trial court, or that the appellants induced the actions of which they now complain. We, therefore, hold appellants are not estopped from challenging the trial court's rulings on their motions to quash.

### APPLICATION OF THE DEADLY WEAPON ALLEGATIONS TO THE OFFENSE OF CRUELTY TO A NONLIVESTOCK ANIMAL

In their sole issue, appellants argue the deadly weapon allegations in their indictments were not applicable to the offenses charged, and therefore, the trial judge should have quashed these paragraphs of the indictments. Relying on sections 42.092(c) and 1.07 of the Texas Penal Code, appellants argue the legislature never intended deadly weapon allegations to enhance the offense of cruelty to nonlivestock animals. They assert because their offenses involved causing serious bodily injury and death to cats, rather than persons, the deadly weapon allegations were

wholly inapplicable. They also assert that allowing the State to allege a deadly weapon when the act was committed against an animal is an expansive reading of the penal code, and that the application of the deadly weapon enhancement to an offense which had an animal as its "victim" is a "legal impossibility."

When reviewing a trial court's decision on a motion to quash an indictment, we apply a de novo standard of review. *Lawrence*, 240 S.W.3d at 915. The matters which can be reviewed on a pretrial basis with respect to indictments are limited. *Farrar v. State*, 95 S.W.3d 648, 651 (Tex. App.—Eastland 2002, no pet.) (citing *State v. Rosenbaum*, 910 S.W.2d 934 (Tex. Crim. App. 1995)). A trial court may not go behind the face of the indictment to make a pretrial determination on the merits of the allegations made in the charging instrument. *Rosenbaum*, 910 S.W.2d at 948; *id.*

We interpret a statute in accordance with the plain meaning of its language, unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not possibly have intended. *Thompson v. State*, 236 S.W.3d 787, 792 (Tex. Crim. App. 2007); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). However, if the text of a statute is ambiguous or the plain meaning leads to absurd consequences that the legislature could not have possibly intended, we may resort to extratextual factors in interpreting a statute. *Thompson*, 236 S.W.3d at 792; *see also* TEX. GOV'T CODE ANN. § 311.023 (West 2005). The rule that a penal statute is to be strictly construed does not apply to the construction of the provisions of the Texas Penal Code. TEX. PENAL CODE ANN. § 1.05(a) (West 2011). Rather, the provisions of the Texas Penal Code are to be construed according to the fair import of their terms, to promote justice, and to effect the objectives of the code. *Id.*

Appellants were charged under section 42.092(b)(1) of the Texas Penal Code, which makes it an offense to torture an animal or in a cruel manner kill or cause injury to an animal. TEX. PENAL CODE ANN. § 42.092(b)(1) (West 2011). Under this statute, the term "animal" means a domesticated living creature, including any stray or feral cat or dog, and a wild living creature previously captured; it does not include an uncaptured wild living creature or a livestock animal. *Id.* § 42.092(a)(1). An offense under section 42.092(b)(1) is a state jail felony, unless the person has two previous convictions for animal cruelty. *Id.* § 42.092(c). When a person has two previous convictions for animal cruelty, the offense is a third degree felony. *Id.*

Here, because of the deadly weapon findings, the offenses were elevated from state jail felonies to third degree felonies. *See id.* § 12.35(c)(1) (West 2011). The deadly weapon findings also meant appellants were ineligible for community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (West Supp. 2010).

Appellants first argue the deadly weapon allegations were inapplicable to their offenses based on the definition of deadly weapon provided in section 1.07 of the penal code. Appellants' argument is based on subsection 1.07(17)(B) which provides that "deadly weapon" means "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(17)(B). According to appellants, the "death" and "serious bodily injury" referenced in subsection 1.07(17)(B) necessarily means death or serious bodily injury to a person, not an animal. However, this argument is based on the assumption that the deadly weapon allegations in this case involved death or serious bodily injury to animals, rather than persons.

As previously discussed, appellants were not entitled to a pretrial determination of the facts surrounding the deadly weapon allegations. *See Rosenbaum*, 910 S.W.2d at 948 (holding a

trial court cannot go behind the face of the indictment and make a pretrial determination regarding the sufficiency of the evidence to support or defeat an element of the offense). Thus, at the time the trial court considered appellants' arguments and ruled on the motions to quash it did not have any evidence before it establishing the facts surrounding the charged offenses. In other words, at the time of the pretrial hearing, it was not clear whether the State intended to prove the deadly weapon allegations by showing death or serious bodily injury as to a person or as to an animal. On appeal, appellants cannot complain of an adverse ruling made by the trial court on a matter the trial court was not permitted to consider. *See Lawrence,* 240 S.W.3d at 916 (stating "this kind of argument cannot show the trial judge erred in denying a motion to quash an indictment" when the argument implicitly disputed the jury's fact findings); *Farrar*, 95 S.W.3d at 651 (concluding denial of motion to quash based on limitations was not error when the appellant was attacking the trial court's pretrial determinations of the facts on appeal). We, therefore, refrain from addressing appellants' argument that section 1.07 precluded the deadly weapon allegations in their indictments. *See Rosenbaum*, 910 S.W.2d at 948; *Lawrence*, 240 S.W.3d at 916; *Farrar*, 95 S.W.3d at 651.

Next, appellants argue the deadly weapon allegations were inapplicable to their offenses because section 42.092(c) provides the only way to enhance the animal cruelty offense. Appellants cite no authority, other than section 42.092(c) itself, to support their argument that this section was intended to be the exclusive means for enhancing this offense. *See* TEX. PENAL CODE ANN. § 42.092(c). Although section 42.092(c) sets out one means by which the punishment for cruelty to a nonlivestock animal may be enhanced to a third degree felony, it does not state it is the only way to do so. We have found no additional authority to support the conclusion that section 42.092(c) is the exclusive means for enhancing this offense. We,

therefore, cannot conclude that section 42.092(c) precluded the deadly weapon allegations in these cases.

It is well-settled that all felonies are theoretically susceptible to an affirmative finding of the use or exhibition of a deadly weapon. *Patterson v. State*, 769 S.W.2d 938, 940 (Tex. Crim. App. 1989). In enacting section 42.092 of the penal code, the legislature protected specific categories of animals, namely "domesticated living creature[s]" and "wild living creature[s] previously captured." TEX. PENAL CODE ANN. § 42.092(b),(c). Under section 42.092, only specifically enumerated conduct rises to the level of a felony. *Id*. § 42.092(c). For example, the offense is a felony only if it involves torture, killing, or causing serious bodily injury to an animal; killing, administering poison to, or causing serious bodily injury to an animal; causing one animal to fight another animal; or using a live animal as a lure. *Id*. § 42.092(b)(1),(2),(7),(8); (c). The offense may also rise to the level of a felony when other conduct is committed and the actor is a repeat offender. *Id*. § 42.092(c).

We conclude that section 42.092, when interpreted according to its plain meaning, did not preclude the application of a deadly weapon enhancement to the charged offenses. We further conclude section 42.092 is not ambiguous, and the plain meaning of the statute does not lead to absurd results. Nothing before us warrants a departure from the general rule that all felonies are theoretically susceptible of a deadly weapon finding. We, therefore, hold the trial court did not err in denying the motions to quash.[3]

---

[3] As previously stated, because of the procedural posture of this case, we do not reach the issue of whether a deadly weapon enhancement may involve death or serious bodily injury to an animal rather than a person.

### MODIFICATION OF PATTERSON'S SENTENCE

In three issues, the State challenges the trial court's modification of Patterson's sentences.

#### A.  First and Third Issues

In its first issue, the State argues the trial court lacked authority to resentence Patterson because Patterson failed to assert a legal ground for modification in his motion to reconsider. Alternatively, in its third issue, the State argues that even if the trial court had the authority to modify Patterson's sentences, it could not have done so without first holding a new punishment trial. The State further complains it was deprived of the opportunity to present evidence in a new punishment trial.

#### 1.  Waiver

As a preliminary matter, we note these complaints were never presented to the trial court, and therefore, have not been preserved for appellate review. *See* TEX. R. APP. P. 33.1(a). The State asserts it did not waive these complaints because it was never given the opportunity to present argument or evidence at the hearing. We disagree. During the hearing on the motion for reconsideration, the trial court spent considerable time explaining the background of the case and the nature of the hearing. The trial court then allowed Patterson's counsel time to present argument. There is nothing in the record indicating the State was precluded from presenting argument or objecting or otherwise making its complaints known to the trial court.

The record shows the State wholly failed to object during the hearing. It never objected to the trial court's modification of Patterson's sentence on the basis that Patterson failed to assert a legal ground for modification in his motion, nor did it object on the basis that a new punishment hearing was required. Additionally, the State never requested the opportunity to present additional evidence. We, therefore, hold the complaints now raised by the State have been

waived. *See id.*; *see also State v. Moore*, 225 S.W.3d 556, 557 (Tex. Crim. App. 2007) (holding trial court did not err in granting a late-filed amended motion for new trial when the State failed to timely object to it); *Vidaurri v. State*, 49 S.W.3d 880, 885-86 (Tex. Crim. App. 2001) (holding appellant waived his complaint on appeal by not objecting to the trial court's failure to allow him the opportunity to present punishment evidence). Accordingly, we overrule the State's first and third issues.

### 2. *Merits*

Even assuming these issues had been preserved for our review, the State would not prevail on the merits. In its first issue, the State argues the trial court was not authorized to modify Patterson's sentences because Patterson's motion advanced no legal ground for modifying his sentences. The primary cases cited by the State are *State v. Aguilera*, 165 S.W.3d 695 (Tex. Crim. App. 2005), and *State v. Davis*, 335 S.W.3d 252 (Tex. App.—San Antonio 2010, pet. granted).

In *State v. Aguilera*, the Texas Court of Criminal Appeals held the trial court acted within its authority when, only a few minutes after it had initially sentenced the defendant and before it had adjourned for the day, it modified the defendant's sentence.[4] 165 S.W.3d at 697-98. In *Aguilera*, the Court of Criminal Appeals stated:

> At a minimum, a trial court retains plenary power to modify its sentence if a motion for new trial or motion in arrest of judgment is filed within 30 days of sentencing. We hold that a trial court also retains plenary power to modify its sentence if, as in this case, the modification is made on the same day as the assessment of the initial sentence and before the court adjourns for the day. The re-sentencing must be done in the presence of the defendant, his attorney, and counsel for the state.

*Id.* (citations omitted).

---

[4]We note *State v. Aguilera*, 165 S.W.3d 695 (Tex. Crim. App. 2005), was decided before the trial court had the authority to grant a new trial as to punishment only. *See* TEX. R. APP. P. 21.9(a); TEX. GOV'T CODE ANN. § 22.108(a) (West 2004).

In deciding *Davis*, we relied on *Aguilera*, and held the trial court had the authority to modify the defendant's sentence when the defendant had filed a motion to reconsider his sentence within thirty days of his initial sentencing. 335 S.W.3d at 255. In *Davis*, the defendant filed a motion for reconsideration of his sentence twenty-two days after his original sentencing. *Id*. at 253. The motion was granted thirty-two days after the original sentencing, apparently without a hearing in open court. *Id*. We concluded the defendant's motion to reconsider his sentence was functionally indistinguishable from a motion for new trial, and therefore, the trial court retained plenary power to modify the defendant's sentence. *Id*. at 254. We further concluded the judgment was not "void," relying on authority stating the absence of the defendant at the time a sentence is modified does not result in a void judgment. *Id*.

The State argues we should not follow *Aguilera* because its statement that "a trial court retains plenary power to modify its sentence if a motion for new trial or motion in arrest of judgment is filed within 30 days of sentencing" was either dicta or was misdrafted by the Court of Criminal Appeals. In making this argument, the State asserts *Aguilera*'s application is limited to situations in which the defendant's sentence is modified on the same day as his original sentence was imposed. The State also argues we should not follow *Davis* because it relied on the above-quoted statement from *Aguilera*.

As an intermediate appellate court, we are bound to follow statements by the Court of Criminal Appeals that constitute deliberate and unequivocal declarations of criminal law. *Murray v. State*, 261 S.W.3d 255, 257 (Tex. App.—Houston [14th Dist.] 2008), *aff'd*, 302 S.W.3d 874 (Tex. Crim. App. 2009); *see Thomas v. Meyer*, 168 S.W.2d 681, 685 (Tex. Civ. App.—San Antonio 1943, no writ) (distinguishing between judicial dicta and nonbinding obiter dicta). The statement in question here, which precedes *Aguilera*'s express holding, is a deliberate and

unequivocal statement of criminal law.[5] We, therefore, follow *Aguilera.* We also follow *Davis*, which relies on *Aguilera.*

Here, the record shows Patterson was initially sentenced on June 10, 2010. Nineteen days after these sentences were imposed, on June 29, 2010, Patterson filed a motion to reconsider his sentences. In this motion, Patterson argued the court should reconsider his eight-year prison sentences and place him on deferred adjudication for a number of reasons, including his history of mental illness, his admission of guilt, and the steps he had taken toward rehabilitation. Patterson also argued his sentences should be modified because it was much harsher than the sentence received by a well-known defendant in another highly publicized animal cruelty case, Michael Vick. On July 9, 2010, less than thirty days after Patterson's sentence was imposed, the trial court held a hearing on his motion to reconsider.

Based on this record, the trial court clearly had plenary power to modify Patterson's sentences. *See Aguilera*, 165 S.W.3d at 697-98; *Davis*, 335 S.W.3d at 253. And, as in *Davis*, Patterson's motion to reconsider was functionally indistinguishable from a motion for new trial.[6] *See* 335 S.W.3d at 253-54.

The State further argues the trial court had no authority to modify Patterson's sentences based on the arguments presented in Patterson's motion. However, *Aguilera* and *Davis* do not stand for the proposition that the trial court's authority to modify a sentence is determined by the arguments presented in the defendant's motion. And, another case relied on by the State, *State v.*

---

[5]Additionally, in *Aguilera* the Court of Criminal Appeals expressed its approval of other cases in which the defendants were resentenced, although not on the same day as the original sentencing. 165 S.W.3d at 698 n.8 (citing *Junious v. State*, 120 S.W.3d 413, 417 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (resentencing fifteen days after original sentencing), and *Ware v. State*, 62 S.W.3d 344, 353-55 (Tex. App.—Fort Worth 2001, pet. ref'd) (resentencing twelve days after original sentencing)).

[6]The record also contains a motion for new trial, which was filed on the same day the trial court resentenced Patterson. This motion asks that a new trial be granted "in the interest of justice." The parties have not addressed the effect, if any, of the motion for new trial on the arguments presented.

*Herndon*, is cited for a different proposition: that a trial court is not authorized to grant a motion for new trial or a motion for arrest of judgment with "unfettered discretion;" it is only authorized to grant such a motion on a ground provided for under the law. *See* 215 S.W.3d 901, 907 (Tex. Crim. App. 2007).

The State also directs our attention to *State v. Stewart*, a case in which the Austin Court of Appeals upheld the granting of a motion for new trial based on sentencing. 282 S.W.3d 729, 738 (Tex. App.—Austin 2009, no pet.). In his motion for new trial, the defendant argued his sentence was disproportionate compared to other defendants in the same situation, and his sentence was not in conformity with the evidence presented at the punishment hearing. *Id*. at 733. In granting a new trial, the trial court explained it always considered a defendant's prior criminal history when determining the length of a sentence. *Id*. The trial court went on to state that when originally sentencing the defendant it had relied on an incorrect assumption—that the defendant's sentence in a prior case was fifteen years. *Id*. The trial court explained that if it had known the defendant's sentence in the prior case was actually only seven years, it would have sentenced him to only twenty years' imprisonment, rather than the twenty-five years actually assessed. *Id*. The State appealed the granting of a new trial, essentially arguing the trial court was not legally authorized to grant a new trial. *Id*. at 734-38. The appellate court rejected these arguments. *Id*.

Here, the State attempts to distinguish Patterson's case from *Stewart* arguing, "in contrast to the facts in *Stewart*, neither the defendant's pleading, nor the evidence at the hearing on the defendant's motion, nor the remarks of the trial court judge demonstrate a legal ground upon which relief can be sustained." We disagree.

Like the situation presented in *Stewart*, the record demonstrates a legal ground for modifying Patterson's sentence. Before the trial court modified Patterson's sentence, Patterson's counsel articulated the arguments presented in Patterson's motion to reconsider. Thereafter, the trial court articulated its reasons for modifying Patterson's sentence, explaining that when Patterson was originally sentenced, the trial court was under the misimpression that Patterson was more culpable than Mitchell. However, after considering the evidence presented at Patterson's hearing along with the evidence presented at Mitchell's punishment hearing, the trial court concluded Patterson and Mitchell were equally culpable. As a result, the trial court explained it had reached the conclusion that Patterson deserved the same sentence as Mitchell.

We are of the opinion the trial court had the authority to modify Patterson's sentence. In his motion, Patterson presented legal arguments for modifying his sentence. The trial court apparently considered these arguments, then stated its own reasons for modifying Patterson's sentence. The trial court's action was based on its own recollection of the evidence presented at Patterson's and Mitchell's punishment hearings. Based on this record, we conclude the trial court acted within its authority in modifying Patterson's sentences. *See Aguilera*, 165 S.W.3d at 697-98*; Davis*, 335 S.W.3d at 255; *Stewart*, 282 S.W.3d at 738.

In its third issue, the State contends the trial court erred by not holding a new punishment phase hearing and by not allowing it to present additional evidence. We disagree. We first note the State presented several witnesses and numerous exhibits at Patterson's initial punishment hearing. After Patterson filed his motion to reconsider his sentences, the trial court held another hearing. Both Patterson and the State appeared at the hearing. The trial court explained the purpose of the hearing, and Patterson presented the arguments in his motion. Thereafter, the trial court stated its reasons for modifying Patterson's sentence, and made its ruling. Although the

State did not present argument or evidence at this hearing, nothing in the record indicates the State could not have done so. Simply put, the State never attempted to present evidence, nor did it ask for the opportunity to do so. We, therefore, cannot say the trial court failed to hold a new punishment hearing, nor can we say the State was not given the opportunity to present evidence. We, therefore, overrule the State's first and third issues.

### B. Second Issue

In its second issue, the State argues the trial court's action in modifying Patterson's sentence was unconstitutional because it resulted in a "commutation," which is an action reserved for the Governor of this State on recommendation of the Board of Pardons and Paroles. *See* TEX. CONST. ANN. art. IV, § 11(b). The State cites two cases in support of this argument, both of which are distinguishable from the case before us. *See State ex rel. Smith v. Blackwell*, 500 S.W.2d 97, 103 (Tex. Crim. App. 1973); *State v. Flood*, 814 S.W.2d 548, 550 (Tex. App—Houston [1st Dist.] 1991, no pet.). *Blackwell* and *Flood* both involved challenges to statutes that allowed defendants, who had been convicted of marijuana-related offenses and whose convictions were final, to file petitions for resentencing in the trial court. The Court of Criminal Appeals held such a statute was "clearly violative of the constitutional provision placing the power of clemency in the hands of the Governor, acting upon recommendation of the Board of Pardons and Paroles." *Blackwell*, 500 S.W.2d at 103. Here, however, the trial court modified Patterson's sentences while it still had plenary power, and before his appeal was completed and his convictions were final. We conclude the trial court's action in no way affected the Governor's ability to commute or pardon Patterson's sentences. We, therefore, overrule the State's second issue.

**REFORMATION OF JUDGMENTS**

Patterson's judgments state that he pled nolo contendere to the offenses of cruelty to nonlivestock animals. However, the reporter's record shows Patterson pled guilty to the charged offenses. The State asks us to reform the judgments to conform to the reporter's record. We grant the State's request. We order the judgments modified to show Patterson pled guilty to the offenses of cruelty to nonlivestock animals.

**CONCLUSION**

Patterson's judgments of conviction are AFFIRMED AS MODIFIED. Mitchell's judgments of conviction are AFFIRMED.

Karen Angelini, Justice

PUBLISH